# MORTON BENDER v. PENELOPE BENDER

[No. 23, September Term, 1981.]

*Decided November 6, 1981.*

The cause was argued before MORTON, LISS and MACDANIEL, JJ.

*Robert A. DiCicco* for appellant.

*Walter W. Johnson, Jr.,* for appellee.

MORTON, J., delivered the opinion of the Court.

We have before us cross appeals from a decree entered on December 2, 1980, in the Circuit Court for Montgomery County (McAuliffe, John F., J.), sitting in equity, awarding the plaintiff, Penelope Bender, the sum of $14,935, representing her share of the reasonable value of the use of the then family home during the period she had been ousted by her husband, Morton Bender.

Appellant and cross-appellee, Morton Bender, appeals therefrom on the grounds that the court of equity was without jurisdiction to award damages; the court was erroneous in denying him any contribution from Mrs. Bender for expenses incurred by him; the court was erroneous in not setting off the entire amount of *pendente lite* payments made by Mr. Bender; and the judge's finding as to the fair rental value of the property was totally without evidentiary basis.

Penelope Bender, appellee and cross-appellant, appeals on the ground that the credit for alimony *pendente lite* payments made by appellant was computed on the basis of 13 months when payments had been made for only 10 months.

Mr. Bender filed a bill of complaint for a divorce a vinculo matrimonii on July 22, 1976, citing Mrs. Bender's adultery

as grounds. On August 21, 1976, Mr. Bender, with the help of ten of his employees, physically removed Mrs. Bender and her belongings from the marital home. On January 11, 1977, Mrs. Bender was awarded alimony *pendente lite* in the amount of $2,500 per month, commencing October 1, 1976. On August 23, 1977, Mr. Bender was awarded a divorce. Alimony was denied Mrs. Bender on the basis of fault. The Court of Appeals, in the first of a series of appeals, affirmed the action of the chancellor, but remanded the case to determine Mrs. Bender's interest in furnishings in the marital home.

At some point in these proceedings it was brought to Mrs. Bender's attention that she had, unwittingly, executed a deed on May 15, 1972, conveying her interest in the marital home to Mr. Bender. Mrs. Bender filed a bill of complaint in equity on October 29, 1976, to set aside the deed and impress a trust upon Mr. Bender's interest in the property, asking, in addition, damages for her wrongful ouster. By decree dated November 21, 1977, the deed was declared void *ab initio* and of no effect; and the court retained jurisdiction as to damages, compensatory and exemplary, as claimed by Mrs. Bender. That decree was affirmed by this Court in a *per curiam* opinion, *Bender v. Bender,* No. 167, September Term, 1978, filed December 8, 1978.

At the final hearing on November 28, 1980, upon the issue of damages, expert witnesses for both parties testified as to the fair rental value of the marital home. On December 2, 1980, the opinion and order from which both parties have appealed was entered. Mrs. Bender was awarded $14,935 for ouster damages computed as follows: she was to receive as her fifty percent share of the rental value of the home $750 per month from the date of ouster (August 21, 1976) to the date of appointment of the trustee in a separate partition proceeding, totalling $22,280, minus that portion of the *pendente lite* payments made by Mr. Bender to Mrs. Bender, which represented the allocation for housing expenses of $7,345 ($565 per month x 13 payments). The chancellor concluded that contribution by Mrs. Bender for expenses incurred by Mr. Bender while in sole possession of the prop-

erty, in the form of taxes, maintenance and utilities, was inappropriate.

## I. *Jurisdiction*

Mr. Bender first argues that "[a] court of equity is without jurisdiction to award damages cognizable at law for the use and occupation of property held by tenants in common, in an unrelated controversy to set aside a deed."

It is well settled that a court of equity "will not retain jurisdiction to grant a purely legal remedy . . .," Pomeroy, Equity Jurisprudence § 233, p. 419 (5th ed. 1941), *see also Paradise Amusement Company v. Hollyday,* 190 Md. 48 (1948). On the other hand, in order to avoid a multiplicity of suits a court of equity will, once it has jurisdiction, "retain jurisdiction to the end, in order to give complete relief, even as to matters over which it would not have had jurisdiction originally." *Paradise Amusement Company, supra,* at 51.

Mrs. Bender requested the Court to (1) set aside the deed conveying her interest in the marital property because her signature was fraudulently induced, and (2) award her damages for the lost use and enjoyment of the marital home from which she was wrongfully and physically ousted by Mr. Bender. Unlike the unrelated controversies which the Court faced in *Paradise Amusement Company, supra,* and on which Mr. Bender relies, the two issues here were sufficiently related in subject matter for the court to settle both. As the chancellor stated in his opinion of December 2, 1980:

> "It might . . . have been preferable to have these various claims considered by the auditor in the pending partition action, and to dismiss the remaining claims for relief in this case. I decline to do so, however, for several reasons — testimony has been taken; the matter has been briefed and argued by counsel; . . . it appears to be in the best interests of the parties as well as the administration of justice to attempt to bring to a swift conclusion the

several cases existing between these parties. The Bill of Complaint in this case includes a claim for general relief, as well as a claim for damages, and this Court has jurisdiction to render an accounting and to declare the rights of the parties as to the areas of concern. Both parties have been fully advised concerning the subject matter to be considered and determined, and due process is not offended by my decision to conclude this aspect of the litigation in this case."

We hold that the chancellor exercised proper residual jurisdiction in disposing of the ouster damages claim.

## II. *Offset Against the Damages Award*

Mr. Bender next argues that it was not proper to deny him any contribution from Mrs. Bender for expenses incurred by him prior to the decree of November 21, 1977, in which the deed of 1972 was declared to be void *ab initio*. He bases his contention on the general rule that "a tenant in common who is in possession of the property is entitled to contribution for those expenditures necessary for the maintenance, benefit and preservation of the property. Tiffany, Law of Real Property, § 459." *See also* 51 A.L.R.2d 388, 464; 20 Am.Jur.2d Cotenancy and Joint Ownership, § 58 (1965). Although he concedes that this Court has denied such contribution where one co-tenant has ousted the other, *Young v. Young,* 37 Md. App. 211 (1977), he would have us believe that the "indiscriminate" application of *Young* to this case would "run counter to the efforts of equity" in that he "acted under color of title, in the absence of any challenge to his *bona fide* belief in the legitimacy of his title and upon the advice of his former counsel." According to Mr. Bender, unless we were to award contribution for the expenses incurred by him, we would be enriching Mrs. Bender "at the expense of an innocent, *bona fide* possessor who has expended his money in the honest belief that he is the absolute owner of the premises."

Mr. Bender compares himself to the appellant in *McLaughlin v. Barnum,* 31 Md. 425 (1869), who, with no knowledge of any defect in his title to certain property, expended substantial sums of money on improvements. However, we agree with Mrs. Bender that "[Mr. Bender's] comparison of himself with an innocent bona fide [possessor] is absurd." She testified that on many occasions during their married life, Mr. Bender would give her a batch of papers, asking her to sign them for the business without explaining to her their contents. The deed was apparently one such paper. In his decree dated November 21, 1977, the chancellor below found:

> "There [was] clear and convincing evidence that this transaction was manifestly unfair, that there was no consideration for her transfer to him of this extremely valuable interest in this property, and that it . . . would be unjust and [i]nequitable to allow such a transfer to stand.
>
> . . . .
>
> I think all that he said was 'sign here, this is for business,' without indicating that it was a deed . . . and without telling her what it was for."

Certainly, Mr. Bender cannot seriously suggest that he thought, in good faith, that after this very questionable transaction he was the sole owner of the property. Mr. Bender then argues that to restore to Mrs. Bender the benefits of the property during the ouster period and yet deny him her share of the financial burdens during that same period creates an inequitable result. Mrs. Bender responds with what she terms the "dispositive" case on this issue, *Young, supra.*

The wife in *Young* sought the sale and one-half of the proceeds thereof of property she held with her husband by the entireties. After finding that there had been an ouster of the wife, this Court said that "[s]ince the appellant ousted the appellee from the jointly owned property, thereby denying her the right to its use and enjoyment, we agree

with the trial judge that the appellant is not entitled to contribution. *See Colburn v. Colburn,* [265 Md. 468] at 475-76; *Hogan v. McMahon,* [115 Md. 195]."

*Young,* however, is not determinative. Unlike the case here, the ousted spouse in *Young* did not demand or recover compensation for the lost possession and enjoyment of the property during the ouster period. It is, we think, a significant difference.

Our research discloses few cases where both the lost benefit is demanded by the ousted spouse and contribution for appropriate payments made is demanded by the spouse who continues to pay the bills.

The Supreme Court of New Jersey, in *Newman v. Chase,* 70 N.J. 254 (1976), dealt with the issue when the plaintiff (Newman), who succeeded to the husband's interest in certain marital property, requested an accounting from his co-tenant, the wife (Chase), who continued to occupy the property after refusing to give the plaintiff access, thus amounting to an ouster. After finding that Mrs. Chase was accountable to Mr. Newman for one-half the value of her use and occupation of the property, the Court went on to say, at 267-268:

> "This conclusion does not end the calculation; however, for the property is encumbered by a mortgage . . . . Mrs. Chase asserts that . . . she has been making mortgage, tax, and insurance payments and undertaking necessary repairs to the house . . . . When, as here, there has been an ouster but the ousted cotenant receives an accounting based on the value of the use and occupation by the cotenant in possession, *equity requires that appropriate payments made by the cotenant in possession be credited in calculating what is due the cotenant out of possession."* (Emphasis supplied).

In *Sirianni v. Sirianni,* 14 A.D.2d 432, 221 N.Y.S.2d 693 (1961), the wife was in sole possession of the premises for 18 months after she ousted the husband, while the husband

made the mortgage payments. The court, concluding that the expenditures on the marital home prior to the final divorce decree were not made as a gift to the wife, granted the excluded husband a recovery of the value of the property denied him measured by one-half of the expenditures on the property he made while excluded from the property. Although it is not clear that the *Sirianni* court was allowing recovery for contributions, *see Doyle v. Hamm,* 84 Misc. 2d 683, 377 N.Y.S.2d 349, 355 (1975), *rev'd,* 383 N.Y.S.2d 373 (1976), it did do so in *Miraldi v. Miraldi,* 50 A.D.2d 538, 377 N.Y.S.2d 635, 636 (1976). The court, citing *Sirianni,* held that the wrongfully ousted wife "was entitled to one-half of the rental value from [the date of ouster] to the date of sale pursuant to the partition decree, after due credit to plaintiff for the expenditures made by him in connection with maintenance, mortgage, taxes, insurance, etc."

We believe it would be imprudent to attempt the formulation of an iron-clad rule concerning the obligations of an ousted spouse to contribute funds to the spouse in possession as reimbursement for monies expended by him or her during the period of ouster upon the property formerly occupied by both spouses as the marital home. Nor will we follow New York's lead in making determinative the factual issue of whether the continued payments by one spouse were meant as a gift to the other. Rather, we think that whether contribution should be awarded in such circumstances should be adjudged on a case by case basis. The question should be answered in light of whether equity or fairness requires that appropriate expense payments made by the spouse in possession should be credited in calculating what is due the ousted spouse for loss of use and enjoyment of the property.

The chancellor concluded that Mr. Bender "is not entitled to any contribution from [Mrs. Bender] for payments made on account of said property during the period [of the ouster]." We have carefully reviewed the record and without attempting to delineate in detail the rather egregious circumstances under which Mr. Bender expelled Mrs. Bender, suffice it to say that Mr. Bender with the aid of ten individ-

uals employed by him literally threw Mrs. Bender and her personal belongings out into the street; and he utilized every available legal tool to prevent her regaining her use and enjoyment of the marital home. In our opinion, equity and fairness not only supported but compelled the conclusions of the chancellor that Mrs. Bender was not required to contribute to the expenses Mr. Bender incurred while the sole occupant of the marital home.

Mr. Bender further contends that the chancellor, in arriving at the final damages award, should have credited him with the total sum of alimony *pendente lite* payments made by him ($2,500 per month) rather than merely that portion representing Mrs. Bender's housing allowance ($565 per month). He argues that her fault and the circumstances of the dissolution of the marriage compel a full credit.

This argument, however, ignores the fact that alimony *pendente lite* is awarded independently of factors such as fault which are considered in determination of a permanent alimony award. "As the nomenclature indicates, an award of alimony *pendente lite* is a monetary payment pending the outcome of litigation which has been instituted but which has not been concluded." *Maynard v. Maynard,* 42 Md. App. 47, 49 (1979). We see no error in the action of the chancellor.

### III. *Finding As To Fair Rental Value*

Mr. Bender next argues that "[i]t was clearly erroneous for the trial court to determine that the present fair rental value of the property was $1,500.00 per month where there was no credible evidence to support such an inflated valuation." We think that there was sufficient evidence for the chancellor to so conclude.

Mr. Bender produced two expert witnesses, one of whom testified that the parties' home had a fair rental value between $900 and $1,100 per month; the other testifying that the rental value was $1,250 per month. Mrs. Bender's expert witness was of the opinion that the house would rent for

$2,000 per month. None of the estimates was supported by figures for comparable residences in the same subdivision. Mrs. Bender's witness compared the house to what he considered equally fine houses in another, more exclusive neighborhood. Mr. Bender's witnesses compared the Benders' home to smaller, less extravagant homes in the same subdivision. Taking these factors into consideration, the chancellor stated:

> "With respect to the fair market rental value of the property, I found this to be a somewhat difficult determination, because the property is unique. The home is much larger and more extravagant than other homes in the neighborhood, and it is difficult to make comparisons. Comparing this home with a home of similar size in Kenwood without interposing a substantial correction factor would be inappropriate. I have determined from all the evidence that the current fair market rental of the property is $1,500.00 per month, and I have determined fair market rental value of the preceding years by assuming an 8% increase each year due to inflation."

## IV. *Cross-Appeal*

Mrs. Bender, also dissatisfied with the award entered in her favor, argues that the chancellor erred when he found that Mr. Bender made alimony *pendente lite* payments for 13 months, from October 1, 1976, to November 1, 1977. She contends that the payments were only made from October 1, 1976, to August 1, 1977, and that she should receive an additional $1,695 ($565 x 3 months). At oral argument counsel for Mr. Bender indicated that there might well be merit in her contention. There is nothing in the record, however, that reflects the period of time such payments were made.

Accordingly, we remand this matter to the trial court in order to determine whether there has been an accurate accounting.

> *Judgment affirmed in part and reversed in part; case remanded for accurate determination of number of pendente lite alimony payments made; costs to be paid by appellant-cross-appellee.*