629 A.2d 1304

**Henry CHOATE, Jr.**

v.

**Ramona C. CHOATE.**

**No. 1606, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Sept. 2, 1993.

348

Frank B. Haskell, III (Haskell, Duley & Gale, on the brief), Upper Marlboro, for appellant.

Debra B. Koehler (Naji P. Maloof, on the brief), Upper Marlboro, for appellee.

Argued before BLOOM, WENNER, and ROSALYN B. BELL, Associate Judge Court of Special Appeals (Retired), Specially Assigned JJ.

ROSALYN B. BELL, Judge, Specially Assigned.

Appellant, Henry Choate, Jr. asks us to decide four issues arising out of the granting of a divorce decree in the Circuit Court for Prince George's County. Three of the four issues

grew out of the ownership of what became the family home, which was brought into the marriage by appellee, Ramona C. Choate. She transferred the home from her name to her name and Mr. Choate's name as tenants by the entirety just a few months before the marriage deteriorated.

Mr. Choate asks us to decide whether the trial court erred

—in ordering him from the family home on 48 hours notice when there were no children involved and no danger to Ms. Choate since she was living elsewhere;

—in granting Ms. Choate the entire appraised value of the family home owned by the parties as tenants by the entirety when there was no marital property;

—in not entering a judgment in favor of him for one-half the value of a $50,000 treasury bill owned jointly by the parties and converted and dissipated by Ms. Choate; and

—in ordering him to provide $25,320 in contribution where the mortgage payments (except four) were made prior to the date of divorce, where he was ousted by the trial court during the final four months of joint ownership, and where the evidence presented does not support such a determination.

We conclude under the facts of this case that (1) the issue of whether Mr. Choate was improperly evicted from the marital home is moot; (2) the award of the entire appraised value of the home was not authorized by the governing statutory or case law; (3) the court did not err in failing to assess half the value of the treasury bill against Ms. Choate; and (4) that the trial judge improperly calculated the contribution award. Thus, we affirm on issues (1) and (3), reverse and remand on issue (2), and remand on issue (4) without affirmance or reversal. We explain.

### THE FACTS

The Choates were married on March 30, 1990. They lived in the home owned by Ms. Choate, which had been purchased by Ms. Choate and her first husband.[1] Substantial repairs

---

1. Her first husband had died and she became the sole owner.

were needed; hence, Ms. Choate refinanced the home in August of 1990. At that time, the property was placed in the names of both parties as tenants by the entirety. The refinancing loan was for $100,000 and was used to pay off several debts, including previous mortgages on the property. After the settlement costs, refinancing costs, and mortgage were paid off, there was $47,570.73 remaining, which was allegedly placed into a joint savings account. Although the exact amounts are not totally clear, Mr. Choate's individual debts of between $12,000 and $16,000, which he had prior to the marriage, were also paid off as part of this process. With the money obtained from the refinancing, the needed repairs were made to the property. Subsequently, a treasury bill was purchased for $48,197 and titled in the names of both parties.

Ms. Choate testified that the house was placed in their joint names at the time of the refinancing in August of 1990 because she thought there would be a better chance of getting a loan in the desired amount if Mr. Choate's name was on the deed. Ms. Choate indicated that no one forced her to put his name on the title to the property and, indeed, no one forced her to go to settlement when the deed was signed. She did state, however, that Mr. Choate had, at one point, exerted some pressure on her to put his name on the deed. Ms. Choate stated that Mr. Choate made it clear he would be unhappy if his name were not put on the title. Ms. Choate acknowledged that, at her deposition taken earlier in the case, she had testified that she made a major gift to her husband when she signed the property over to him at the refinancing transaction. At trial, when she was confronted with her statement made at the deposition, she asserted that she did not mean the transfer as a gift and the inclusion of a statement to that effect was the reason why she had refused to sign the deposition.

The Choates started encountering marital difficulties and on January 1, 1991, at a New Year's Eve party, the marriage seemed to break down as a result of a dispute over a dress that Ms. Choate had worn to the party. After the New Year's Eve difficulties, Ms. Choate moved out of the marital bedroom and into the spare bedroom in the, by then, jointly owned

home. On January 4, 1991, Ms. Choate cashed the $50,000 treasury bill. Once Mr. Choate learned of this, he got very angry and refused to contribute to the mortgage payments on the refinanced home; however, both parties continued to reside in the home. Ms. Choate claimed she used most of the funds from the treasury bill to repay loans to her father, and the trial judge so found. In February of 1991, Ms. Choate filed for a limited divorce. Ms. Choate finally left the home with her daughter in June 1991.

After five days of taking testimony, the trial judge granted an absolute divorce decree to Ms. Choate on the ground of constructive desertion and ordered that $158,000 of the total value of the marital home, which was titled as tenants by the entirety, was the separate nonmarital property of Ms. Choate; that the home be sold by judicial sale; that the proceeds were to be distributed in accordance with the findings of the court; [2] and that Mr. Choate was to vacate the home immediately.

The trial judge also found that the funds that were used to purchase the treasury bill came from a savings account Ms. Choate had maintained, which contained $35,000 of her funds, plus $12,000 netted from the refinancing. The judge also found that Ms. Choate had paid over $12,000 for Mr. Choate's nonmarital bills and the additional sum required for the purchase of the treasury bill came from Ms. Choate's checking account. The trial judge refused to award a judgment to Mr. Choate for one-half of the value of a treasury bill liquidated by Ms. Choate just prior to the separation of the parties. Mr. Choate appealed the court's order. After the sale of the residence, the trial judge ordered Mr. Choate to pay $25,320 in contribution. Mr. Choate again appealed. These appeals are consolidated and are being considered together by us.

---

**2.** It is difficult to reconcile the trial court's order with the facts. The house was valued at $158,000; the lien from the refinancing was about $100,000. Unless the house brought $100,000 more than the appraised value, the $158,000 simply would not be there. In fact, the house was sold by the trustee at auction for $163,000. Thus, the parties conceded at oral argument that, after payment of costs and expenses, the property did not produce much, if any, excess over the $58,000.

## MR. CHOATE'S EVICTION

On July 29, 1991, at the conclusion of the trial, the trial judge ordered Mr. Choate to leave the family home within 48 hours. Mr. Choate contends that the trial judge erred in ordering him to leave because (1) there were no children of the marriage and, hence, no use and possession order was involved; and (2) there was no danger to Ms. Choate because she was living elsewhere. The trial judge, after hearing the case in full, concluded that the house, which had been owned by Ms. Choate's former husband and herself, was Ms. Choate's and that Mr. Choate had contributed nothing to it; that at the time of trial, Mr. Choate was living in the house; and that Ms. Choate had left under conditions that the judge ruled constituted a constructive desertion. The trial judge also concluded that he had the authority to order Mr. Choate out under *Cote v. Cote,* 89 Md.App. 729, 733–34, 599 A.2d 869 (1992).[3]

The trial judge gave his oral opinion and order from the bench and confirmed it by written order the next day. He also appointed a trustee to sell the property and to distribute the proceeds "after considering [Mr. Choate's] contribution toward mortgage payments made by [Ms. Choate]." The trial judge then ordered Mr. Choate to vacate the property by noon on July 31, 1992, and enjoined him from going to or entering upon the premises after July 31, 1992.

Mr. Choate admits that, at least arguably, the issue is moot as the house has now been sold, although he still asks us to reach the issue for the assistance of bench and bar. We decline to do so except in a limited manner. We cannot help but note that Mr. Choate coyly failed to tell us that he was the

---

3. In *Cote,* 89 Md.App. at 733–34, 599 A.2d 869, this Court reaffirmed the right of the trial court, in a divorce action, to issue an injunction barring a party from the marital home, especially when there have been allegations of possible physical harm or harassment. In the case now before us, there were allegations that Mr. Choate had physically assaulted Ms. Choate in an effort to force her to have sexual relations with him. Ms. Choate filed several assault charges against Mr. Choate, one of which resulted in a conviction.

purchaser of the property at the judicial sale. This certainly renders the order moot except to the extent that the order provides:

"ORDERED, that Defendant be and he hereby is enjoined from going to and/or entering the residence at 12848 Holiday Lane, Bowie, Maryland, after vacating it on July 31, 1992...."

For the same reason that the order is moot, namely, Mr. Choate's purchase of the property, the portion of the order that enjoins Mr. Choate from going to or entering the residence after leaving it must be vacated.

Mr. Choate contends that the order is not moot because the issue of contribution following the eviction remains open. In view of our disposition of the contribution issue, which will be explained in detail later in this opinion, it is not necessary that we decide whether the court had the authority to evict. Moreover, Ms. Choate advises us that the portion of the record that would support the court's order was omitted, based on Mr. Choate's representation that the alleged abuse of Ms. Choate was not being contested. Mr. Choate did not contest this position at argument.

## AWARD OF THE APPRAISED VALUE OF THE HOUSE TO MS. CHOATE

Mr. Choate next contends that the court erred in awarding the appraised value of the home to Ms. Choate. In his oral opinion, after giving ample and cogent reasons for so finding, the trial judge commented that he believed Mr. Choate to be a liar.[4] The trial judge then said:

"As I said earlier, Mr. Choate, you came in only with your socks and underwear to this marriage, and you want to walk out with half of everything that this lady has, and that is not

---

4. We cannot help but note that, while this conclusion may appear to be harsh, it is amply supported by the record and testimony taken during the proceedings.

right. [Counsel for Mr. Choate] tells me that might not be right, but that is the way the law is. I cannot believe that." The trial judge then determined that "$158,000 of the value of the real property titled in both parties names is the nonmarital property of 'Ms. Choate.'"[5] The trial judge made no monetary award.

The equity of the court's position does not escape us. What does elude us, however, is how the judge is able to make an award in this case under the governing statutes and case law.

We are presented with that anomalous situation where the party who claims the property is nonmarital would have been better off if he or she could establish that the property was marital. In this case, no marital property existed;[6] hence, no marital assets were available out of which to make a monetary award.

Approximately six times in recent memory, a bill has been before the Legislature in an attempt to modify the results of *Grant v. Zich*, 300 Md. 256, 477 A.2d 1163 (1984), and its progeny. Each time the bills have been rebuffed. This case brings the continuing problem of *Grant* into clear focus.

In *Kline v. Kline*, 85 Md.App. 28, 42, 581 A.2d 1300 (1990), *cert. denied*, 322 Md. 240, 587 A.2d 246 (1991), Judge Bloom, writing for this Court, pointed out:

> "In *Grant*, the Court of Appeals held that the presumption of gift that arises from the conveyance of one spouse to another has no applicability to the determination of whether property is marital or nonmarital. *Dorsey v. Dorsey*, 302 Md. 312, 487 A.2d 1181 (1985), recognized the possibility of proving a gift of the marital status of property as well as the property itself. In *Watson [v. Watson*, 77 Md.App. 622, 551

---

5. As earlier stated, this was subject to the amount of approximately $100,000 due on the refinancing.

6. Certainly, some payments were made on the mortgage before the parties were divorced. Neither side sought to establish that this was an acquisition of marital property, nor did the trial judge make such a finding.

A.2d 505 (1989)], however, we explained that a gift of property, whether proved by presumption, by testimony as to expression of intent, or by documents conclusively establishing donative intent, does not transmute the status of that property, for purposes of the Act, from nonmarital to marital. To effect such transmutation, we pointed out, there must be an express intent to give up, waive, or surrender the nonmarital status as well as to give the property itself."

In the instant case, Ms. Choate made several statements as to why she placed Mr. Choate's name on the deed; none, however included an expressed intent to give up, waive, or surrender the nonmarital status of the property. The trial judge found, and we agree, that the property was nonmarital.

 If the parties had marital property, out of which an adjustment could be made in the form of a monetary award, then the trial judge in his or her discretion may adjust for the nonmarital property and determine an amount not exceeding the amount of the marital property after considering the 10 factors specified in Md.Fam.Law Code Ann. § 8–205(b) (1984, 1991 Repl.Vol.). The court may also determine the method of payment. Those 10 factors are:

"(1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

"(2) the value of all property interests of each party;

"(3) the economic circumstances of each party at the time the award is to be made;

"(4) the circumstances that contributed to the estrangement of the parties;

"(5) the duration of the marriage;

"(6) the age of each party;

"(7) the physical and mental condition of each party;

"(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

"(9) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

"(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both."

Under the provisions of Md.Fam.Law Code Ann. § 8–201(e)(2) (1984, 1991 Repl.Vol.):

" 'Marital property' does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources." [7]

---

**7.** The original definition of "marital property," which appeared in 1978 in Senate Bill 604, was "all property, however titled, acquired by either or both spouses during their marriage, except property excluded by a valid agreement between the parties." When the Groner Commission filed its report with the Governor in 1978, the only exception was "property excluded by valid agreement between the parties." The definition of marital property was modified prior to the bill's enactment to add:

> "[Marital property] does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources."

This definition originally appeared in Md.Cts. & Jud.Proc.Code Ann. § 3–6A–01 (1974, 1980 Repl.Vol.).

In 1984, the Legislature revised the Code to include a separate family law article. In the chapter laws that accompany § 8–201, the Commission to Revise the Annotated Code noted:

> "[F]or consideration by the General Assembly, that the definitions of 'family home,' 'family use personal property', and 'marital property' exclude property that was acquired before the marriage or acquired by inheritance or gift from a third party. The definitions are unclear, however, as to the status of property acquired jointly before the marriage, or acquired by gift to or inheritance by the parties jointly."

This is just one example of the confusion surrounding the Act. This particular concern raised by the Commission was resolved in part by *Kline*, 85 Md.App. at 28, 581 A.2d 1300. Had the Legislature not modified the legislation as proposed by the Commission, the property in the instant case would have been marital property.

A gift by one spouse to the other has an effect on ownership, but does not have an effect on whether it is marital or nonmarital property. *Kline,* 85 Md.App. at 43–44, 581 A.2d 1300. Once that ownership is altered, as it was here, it becomes "joint property" and, with limited exceptions, "the court may not transfer the ownership of personal or real property from 1 party to the other." Md.Fam.Law Code Ann. § 8–202(a)(3) (1984, 1991 Repl.Vol.). That is precisely what this trial judge indirectly attempted to do. He properly found that the value of the home was Ms. Choate's nonmarital property. The implication of his order was that Ms. Choate would receive up to $158,000 prior to any distribution. The parties agreed at oral hearing that she did receive all the net proceeds.

In what was apparently an effort to get around *Grant, Watson v. Watson,* 77 Md.App. 622, 551 A.2d 505 (1989), and *Kline,* the court's order of July 30, 1992 does not state that the proceeds of sale should be distributed to Ms. Choate, but rather directs the trustee to sell the property and make equitable distribution after considering mortgage payments. The opinion of the court, however, given from the bench July 29, 1992, makes clear that the court intended that $158,000,[8] the value of the house at the time of the marriage, was to be given to Ms. Choate. This the trial judge could not do under these facts.

Ms. Choate would distinguish *Watson* and *Kline* on their facts. In *Watson,* 77 Md.App. at 622, 551 A.2d 505, the parties purchased a home in November 1971, titled it in both their names as tenants by the entirety, and used it as their marital residence. This home became too small so, in order to purchase a larger one, Mr. Watson secured $40,000 from his mother. The sum was deposited into a savings account subject to the order of either Mr. or Ms. Watson. The parties then sold their home and deposited the proceeds into the same joint saving account. In November 1979, the parties pur-

---

**8.** Actually, this would be erroneous as the net asset value was closer to $58,000. *See* n. 1, *supra.*

chased a new home, titling it in both names as tenants by the entirety. The money that was left over paid off marital debts and went toward purchasing new furniture. *Watson,* 77 Md. App. at 628, 551 A.2d 505.

The Watsons separated in May 1982 and an absolute divorce was granted to Ms. Watson on January 20, 1983. Mr. Watson sought a return of the $40,000 on the theory that it remained his property because it was nonmarital. *Watson,* 77 Md.App. at 632, 551 A.2d 505. Ms. Watson claimed that either the $40,000 or the property purchased with that sum was a gift to her. *Watson,* 77 Md.App. at 632, 551 A.2d 505. The master, chancellor, and an *en banc* court dealt with the issue as one of a gift of property.

In reviewing the decision, Judge Bloom, writing for this Court, said:

"Whether appellant made a gift of property, *i.e.,* either co-ownership interest in the $40,000 by depositing it in a joint savings account or a fee simple estate in the realty as co-tenant by the entireties by so titling the house purchased with that $40,000, is irrelevant to our consideration. It is also irrelevant whether a party establishes the fact of such a gift by relying on a presumption or by the production of evidence sufficient to prove all the elements of gift set out in *Dorsey [v. Dorsey,* 302 Md. 312, 487 A.2d 1181 (1985) ]. As a consequence of that gift, Mr. and Mrs. Watson became equal tenants in common of the realty upon the severance of their marriage, with each being legally entitled to one-half of the proceeds of any sale of the property. The making of a gift of an ownership interest or estate in the property, however, does not affect a transmutation to marital property of the partial nonmarital property status derived from the application of the 'source of funds' rule announced in *Harper [v. Harper,* 294 Md. 54, 448 A.2d 916 (1982) ]. The master found, as a matter of fact, that $40,000 of the funds used to acquire the Bowie home was directly traceable to the money advanced to appellant by his mother. What is at issue here, therefore, is not whether appellant gave appellee a legal estate or interest in his property, but whether he

also gave, surrendered, released, or waived his right, in the event of a future divorce, to claim whatever benefits the nonmarital status of the property would afford him when the court determines whether to grant either party a monetary award in order to effect an equitable adjustment."

*Watson,* 77 Md.App. at 636, 551 A.2d 505. Thus, in *Watson,* we held that, even if a party proves a gift of the title, it does not transmute the property from nonmarital to marital.

In *Kline,* 85 Md.App. at 28, 581 A.2d 1300, Mr. Kline, a widower with children, married a divorcee with children. Neither wanted to live in the other's home, so they sold their respective properties, pooled the proceeds, and purchased a home, as joint tenants, before they got married. Mr. Kline put in $69,000, Ms. Kline put in about $10,000, and they took out a mortgage for $20,750. Three weeks later, the Klines got married and after a few months retitled the home as tenants by the entirety. At the time of divorce, they had reduced the mortgage debt to $20,000. *Kline,* 85 Md.App. at 37–39, 581 A.2d 1300.

The issue presented on appeal was whether the property was marital or nonmarital and, if nonmarital, which party contributed what nonmarital portion. Mr. Kline argued that he was entitled to recoup his $69,000. We disagreed and Judge Bloom, again writing for this Court, stated:

"When the parties in this case pooled their money to purchase the ... property, they gave to each other undivided ownership interests in property that was ... neither marital nor nonmarital, for prior to their marriage those concepts did not exist. The mutual gifts were of *all* rights of property, legal and equitable, which each donor had. Unlike the situation in *Watson* [77 Md.App. at 622, 551 A.2d 505], where the gift was made, during the marriage, of property that by virtue of marriage had acquired a nonmarital status, here there was no nonmarital status to be either retained or given, waived, released, or surrendered at the time of the gift. When they married, three weeks later, the

parties jointly owned the property; therefore, they were equal joint nonmarital contributors of the entire property.

"The second fallacy, the mistaken belief that a contribution of nonmarital property somehow entitles the contributor to get back the property or its value, as if the contribution is deemed to create an indebtedness for which the contributor should have a lien, is a total distortion of the Act. As we pointed out in *Watson*, when one makes a valid gift of property, whether that property is ... marital or nonmarital, the donee acquires a vested interest in the property. The court, when it grants a divorce, cannot return to the grantor spouse the legal interest that he or she had earlier given just because the gift was of nonmarital property; to do so would violate § 8–202(a)(3) of the Act, which expressly prohibits the divorce court from transferring ownership of property, real or personal, from one spouse to the other. *Watson*, 77 Md.App. at 631, 632, 551 A.2d 505. *See also Rogers v. Rogers*, 80 Md.App. 575, 586, 565 A.2d 361 (1989); *Nisos v. Nisos*, 60 Md.App. 368, 380–81, 483 A.2d 97 (1984)." (Emphasis in original.)

*Kline*, 85 Md.App. at 43–44, 581 A.2d 1300. We held that at the instant of the marriage the Klines became the co-owners of a $79,000 asset. This mutual gift giving made the Klines joint, nonmarital contributors to the entire property, and this did not create an indebtedness for which Mr. Kline should have a lien. *Kline*, 85 Md.App. at 44, 581 A.2d 1300. In adjusting the equities between the parties, the Court said:

"The fact of the gift, the value of the property given, and the circumstances under which the gift was made are important factors to be considered by the court in determining whether to grant the donor spouse a monetary award ... *provided* there is sufficient marital property to support such an award. *Watson*, 77 Md.[App.] at 638 n. 5, 551 A.2d 505." (Emphasis added.)

*Kline*, 85 Md.App. at 44, 581 A.2d 1300.

Thus, with respect to *Kline*, *when* the property was transferred is irrelevant. The contribution made by each spouse

was nonmarital because it went into the purchase and their interest was directly traceable to that nonmarital investment. There are no distinguishing factors in either *Watson* or *Kline* that help Ms. Choate's case. Both set forth the law that governs the classification and disposition of property, and the factors to be considered in adjusting the equities between the parties. These same principles govern the disposition of the Choates' property.

■ Ms. Choate claims that it would produce an absurd result if we were to hold that, even though the property was hers prior to marriage, she could not have it returned simply because of the form of the title. She may find it absurd, but it is precisely the result mandated by the law. That was the law before the Property Disposition Act and it is the law now. With very few exceptions, under Md.Fam.Law Code Ann. § 8–205(a) (1984, 1991 Repl.Vol.), the court may not transfer the interest in property from one spouse to the other. The court may only make an adjustment in the form of a monetary award and then only out of marital property. The home could not have become marital property because marital property does not include property "directly traceable" to property acquired before the marriage. Hence, the absurdity that Ms. Choate perceives reflects the statutory law.

The case law on marital property has developed somewhat slowly and not always as cleanly as we might like. This happened largely because Maryland's concept of equitable distribution does not even remotely track the law of most other states. It is a different way of looking at the adjustment of property rights. One line of cases centered on the nonmarital interest in the property. For instance, in *Harper v. Harper*, 294 Md. 54, 80, 448 A.2d 916 (1982), the Court of Appeals held:

> "Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distri-

bution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment."

Later, in *MacIntire v. McKay,* 74 Md.App. 577, 539 A.2d 258 (1988), we took that language too literally and stated: "[T]he Husband would be entitled to a proportionate and fair return on his non-marital investment from the proceeds of the sale of the property in lieu of partition." *MacIntire,* 74 Md.App. at 586, 539 A.2d 258.

In neither *Harper* nor *MacIntire* was the question raised as to whether there was marital property out of which to make the monetary award; hence, the language is less than precise. In *Harper,* 294 Md. at 82, 448 A.2d 916, there was marital property, but the Court of Appeals remanded the case to determine the extent to which the property and the marital residence were to be characterized as nonmarital or marital; to determine the value of the marital property; and to determine an equitable monetary award. Moreover, *MacIntire* predated both *Watson* and *Kline,* which make clear that a monetary award cannot exceed the value of the marital property.

Ms. Choate also relies on *Pope v. Pope,* 322 Md. 277, 587 A.2d 481 (1991). In *Pope,* Joseph T. Pope, Sr. decided to give his home to his sons, Robert Pope and Tommy Pope (Joseph, Jr.). Robert and his wife Debra desired to maintain their residence in the home so they purchased Tommy's one-half interest. Robert and Debra later refinanced the house to make some improvements. *Pope,* 322 Md. at 280, 587 A.2d 481. The property was deeded to Robert and Debra as tenants by the entirety. Robert and Debra got a divorce shortly after that. Robert received use and possession of the house for three years following the divorce. After the three-year period, the trial court ordered that the house be sold and the proceeds divided equally. *Pope,* 322 Md. at 280, 587 A.2d 481.

Robert was displeased with the part of the judgment that covered the disposition of the proceeds from the sale of the

home and he appealed. We affirmed the judgment and Robert appealed to the Court of Appeals. *Pope,* 322 Md. at 280–81, 587 A.2d 481. In its analysis, the Court of Appeals concluded that the home was not wholly marital property and that the titling of the property had no effect on the property's marital or nonmarital status. *Pope,* 322 Md. at 283, 587 A.2d 481. The Court said:

> "The burden was on Debra to establish every element of a gift, and the proof must be by clear and convincing evidence. *Dorsey,* 302 Md. at 318, 487 A.2d 1181. The only evidence, other than the titling, tending to show that Debra was entitled to a half-interest in the home was her flat assertion that she and Robert 'purchased' the home from the father. As we see it, Debra suggests that the 'shortcut' in the conveyancing translated into a 'sale' by the father and a 'purchase' by Robert and her of the entire interest of the father, albeit for only half of the appraised value. Then, she avers, the father made a gift to Tommy of the $16,000 she and Robert paid the father for the home. We do not find this scenario to be persuasive in the circumstances. Furthermore, as we have seen, the conveyance to Robert and Debra as tenants by the entireties carried no presumption of a gift, either by the father to Debra or by Robert to her. It is not disputed that the father's steadfast desire was to make a gift of the home to Robert and Tommy in equal shares. It is clear that, under the established law of this State, the father's intent was not defeated by the manner in which the title to the home became vested in the names of Robert and Debra. We hold that an amount representative of Robert's contribution of $16,000 was not marital property because it was acquired by Robert by gift from a third party in accord with § 8–201(e)(2)(ii) of the Act." (Footnote omitted.)

*Pope,* 322 Md. at 283–84, 587 A.2d 481. The Court held that one-half the property was a nonmarital gift by Joseph Sr. to Robert and the other half was marital property by virtue of the purchase of Tommy's interest by Robert and Debra. Therefore, the Court of Appeals vacated that portion of the

order that commanded that the net proceeds from the sale of the house be divided equally between the parties.

Ms. Choate argues that *Pope* "required distribution of proceeds in accordance with an equitable distribution which would reflect a return on one of the parties' nonmarital investments." This is not totally correct. What the Court sought to resolve in *Pope* was whether there was a presumption of a gift from Joseph Sr. to Robert and Debra, which was rebutted. Robert and Debra by law were joint co-owners and thus equally entitled to share in the proceeds of the sale.

■ The same is true of the case now before us. The property is nonmarital, but Mr. and Ms. Choate are joint co-owners. It is up to the trial court to adjust the equities to reflect the nonmarital portion of the property. Thus, while *Pope* allows Ms. Choate to have her nonmarital share recognized, it does not allow her to achieve the result she seeks, namely, to retain all proceeds from the sale of the home.

## THE TREASURY BILL

Mr. Choate next argues that the court erred by refusing to issue a judgment in his favor for one-half of the value of the treasury bill. He claims that he has a right to one-half of the treasury bill because it was placed in the joint names of the parties. He also argues that the treasury bill is nonmarital property.

At trial, Ms. Choate testified that she liquidated the bill, and used the proceeds for payment of a debt to her father, which was solely hers. Mr. Choate was unable, either at trial or in his brief, to trace any of the funds that purchased the bill, nor could he trace any of those funds to marital property. With respect to the treasury bill, the trial judge in his oral order stated:

"THE COURT: The T-bill, I find, flows from the proceeds of the house. One, it's not there. Two, if it was there, he has no claim in it.... The $50,000 came from earlier savings of $35,000 plus a few other thousand dollars and the 12. $35,000 of the T-bill is hers, and I add to that

another $12,000 in the bills that she paid for him, and funds that were withdrawn from her checking account.

\* \* \* \* \* \*

"His bills. He was supposed to pay her back; however, I also believe the fact that her dad and brothers and sisters lent money back and forth to one another. Whatever is in the—her share of the T-bill, ah, as my best understanding, is $35,000 plus 12, which leaves $7,000. And there may well be marital property for the other three or four thousand dollars."

In this case, as a practical matter, the treasury bill was liquidated while the parties still resided together in the marital home. Mr. Choate was immediately informed of the liquidation and, in response, he thereafter refused to contribute to the mortgage payments on the home.

 As a general rule, property disposed of before trial cannot be marital property. *Gravenstine v. Gravenstine,* 58 Md.App. 158, 177, 472 A.2d 1001 (1984). An exception to this rule is where one spouse claims that the property was improperly dissipated by the other spouse. *See Rock v. Rock,* 86 Md.App. 598, 618–20, 587 A.2d 1133 (1991). Once improper dissipation is alleged, the burden shifts to the spouse claiming that dissipation occurred to prove that the other spouse used the marital property during the marriage to prevent inclusion of the assets for any consideration of a monetary award. Mr. Choate, has not, however, made any specific claim of dissipation or satisfied his burden of proof to show that the treasury bill was improperly cashed. In addition, Mr. Choate has not argued that the treasury bill was marital property. In fact, he characterizes the bill in his brief as nonmarital. Mr. Choate lays claim to the treasury bill only on the grounds that it is his by virtue of the fact that his name appears on it. Since Mr. Choate concedes that the treasury bill was nonmarital and Ms. Choate had the right to reduce it to her possession, Ms. Choate was free to spend it as she saw fit. Ms. Choate testified that she used the treasury bill to pay off debts she had accumulated, including a substantial debt to her father.

Because the treasury bill was titled in both names, either party had the right at any time to cash it, as Ms. Choate did.

## CONTRIBUTION

Finally, in a separate action, which was consolidated with this appeal, Mr. Choate claims that the trial court abused its discretion by ordering him to provide $25,320 in contribution where the mortgage payments—except four—were made prior to the date of divorce and where he was ousted by the trial court during the final four months of joint ownership and where the evidence presented did not support such a determination.

On February 12, 1993, the trial court entered an order directing the court appointed trustee to disburse the entire proceeds from the sale of the jointly owned property to Ms. Choate and directed Mr. Choate to provide contribution "for one-half of all mortgage payments made by [Ms. Choate] between December, 1990 and November, 1992 totalling $25,-320.00, as previously ordered by this Court in the Order dated July 30, 1992." Mr. Choate contends that, since the majority of mortgage payments were made prior to the final divorce, they were made from marital property and are therefore not subject to an order for contribution. We disagree.

In *Dobbyn v. Dobbyn,* 57 Md.App. 662, 682–83, 471 A.2d 1068 (1984), Judge Garrity wrote:

"Generally, a co-tenant who pays the mortgage, taxes, and other carrying charges of a tenancy by the entirety, is entitled to contribution from the other. *Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982). There is no ironclad rule, however, obligating an ousted spouse to contribute funds to the spouse in possession as reimbursement for monies expended by him or her during the period of an ouster. *Bender v. Bender,* 50 Md.App. 174, 436 A.2d 518 (1981). Whether contribution should be awarded is determined on a case by case basis. *Id.* at 181, 436 A.2d 518. This determination is governed by equity or fairness under the attendant circumstances of each case. *Id.*"

 In deciding whether to make a contribution award, the trial judge must decide if the payments were made for property that was "(1) wholly marital; (2) wholly nonmarital; or (3) partly marital and partly nonmarital." *Spessard v. Spessard,* 64 Md.App. 83, 95, 494 A.2d 701 (1985). The trial judge must also decide if the ouster [9] of one spouse affects the proportion of the contribution. *Spessard,* 64 Md.App. at 95, 494 A.2d 701. Here, as previously discussed, the home was jointly owned, but retained some nonmarital characteristics.

 Mr. Choate throughout his brief maintains that Ms. Choate introduced no evidence to substantiate her claim for contribution. While our review of the record confirms that the evidence is sparse, it does not help Mr. Choate's position because: (1) the decision to award contribution is within the discretion of the trial judge based on the evidence adduced at trial; and (2) Mr. Choate did not introduce any evidence to show that he made any payments allowing him to avoid contribution. The trial judge did err, however, with respect to the amount of contribution awarded.

At the conclusion of the hearing, the trial judge said:

"I believe Mrs. Choate and her witnesses, and to tell you the truth, Mr. Choate, I don't know what I believe from you. But not knowing, I'm not going to believe much of what you had to say, because you didn't know anything. I cannot believe that anyone who is involved in a serious divorce case such as this that has been going on for Lord knows how long, can come to court and not remember any of the times, any of the places, any of the dates; and you didn't. I

---

9. " 'Ouster is the actual turning out or keeping excluded the party entitled to the possession of any real property.' " *Spessard,* 64 Md.App. at 88, 494 A.2d 701, quoting *Childs v. Kansas City, St. Joseph & Council Bluffs Railroad Co.,* 117 Mo. 414, 23 S.W. 373, 378 (1893). Ouster has been defined by this Court in *Young v. Young,* 37 Md.App. 211, 221, 376 A.2d 1151, *cert. denied,* 281 Md. 746 (1977), as:

"[A] notorious and unequivocal act by which one cotenant deprives another of the right to the common and equal possession and enjoyment of the property."

There has not, however, in the instant case been any allegation of ouster by Ms. Choate.

cannot believe that you could not know that you were still married, and that made no difference. When you moved in with Mrs. Choate, it made no difference, but you said you were not married when you started living with her in '88, and your divorce was not granted until '89. That is only one of the many little inconsistencies, or large inconsistencies. And I think most telling, though, was that letter that you left either on her windshield or somewhere, that said you threw away the pictures, threw away the trinkets. You threw away this, and you threw away that, but for goodness sakes, don't tell anybody, and don't use it against me. And you denied that on cross examination. Now, that leads me to believe, as they say out on the street, that you're a liar. And I so find you to be."

On February 12, 1993, the trial judge ordered that, if there were any proceeds remaining after Ms. Choate was given the $158,000, they should be "divided equally between the parties." The judge also ordered Mr. Choate to pay $25,320.00.

In December 1990, Mr. Choate refused to make any further mortgage payments on the home. Ms. Choate testified at trial that Mr. Choate did not help her with any more mortgage payments, utility bills, or phone bills. She testified that the phone bill would be up to $150–$155 per month. In addition, she told the court that Mr. Choate would leave the sprinkler on in the yard when it was raining and the water bill would be $240. Also, Ms. Choate testified that Mr. Choate would leave the windows wide open with the air conditioning running and that the electric bills would be "ridiculous because he was doing anything he can to deliberately, anything to make it cost me every penny that I can earn to maintain."

The trial judge ordered Mr. Choate to pay one-half of the total mortgage payments. It appears, however, after reviewing the record, that the figure the trial judge used represents the total amount expended. Indeed, Ms. Choate in her brief cites the $25,320 figure as being the total amount she paid for the mortgage after December 1990 until the property was sold.

While the amount of the award may have been incorrect, we cannot say that the trial judge abused his discretion in making the contribution award itself. Just prior to and after she left the home, Ms. Choate had to continue to make the mortgage payments and pay the utility bills even though she was unable to live in the home. Although Ms. Choate has made no such claim, since she was the one who had been ousted, under the holding in *Bender v. Bender,* 50 Md.App. 174, 181–82, 436 A.2d 518 (1981), *cert. denied,* 292 Md. 555 (1982),[10] Ms. Choate was under no obligation to contribute to the mortgage payments, maintenance or upkeep of the property. Indeed, if Mr. Choate had been the one who had been ousted by Ms. Choate, he would not have been required to make the payments. Here, however, he chose to remain in the home and receive all of the benefits without paying any of the expenses. Ultimately, it was Mr. Choate himself who caused his removal from the home. Testimony taken at the trial revealed that during the time Mr. Choate was living in the home he had systematically removed switch plates, torn off wallpaper, and pulled up the flooring in the kitchen. This devalued the home which later had to be sold.

Mr. Choate is also concerned with the money paid during the four months after his eviction in July, and the sale of the home in November. During that period of time, the parties' divorce was final; therefore, they held the property as tenants in common and not as tenants by the entirety. Mr. Choate claims that his eviction was an ouster, which under the law of co-tenancy is enough to keep him from having to pay any of the expenses during this period. *See Young,* 37 Md.App. at 211, 376 A.2d 1151. The trial judge, however, in fashioning his order did not make a finding on why he was evicting Mr. Choate. On remand, it is up to the judge to articulate why Mr. Choate was evicted and whether this constituted an ouster that would relieve Mr. Choate from his responsibility to

---

**10.** In *Bender,* 50 Md.App. at 181, 436 A.2d 518, we held that whether contribution should be awarded is up to the trial court and must be determined in light of the circumstances on a case by case basis.

contribute to the expenses of the marital home. The trial judge also needs to determine the amount Mr. Choate has to pay, after taking into consideration the amount paid by Ms. Choate, the damage caused by Mr. Choate, and the other circumstances during the period immediately prior to and after the parties' separation.

In recalculating the award, the trial judge may take into consideration Ms. Choate's testimony that Mr. Choate ran up the bills to harass her and adjust the equities in whatever manner the trial judge believes is appropriate within the guidelines established by the prevailing law.

JUDGMENT WITH RESPECT TO ISSUES (1) AND (3) AFFIRMED. JUDGMENT WITH RESPECT TO ISSUE (2) REVERSED AND REMANDED. JUDGMENT WITH RESPECT TO ISSUE (4) REMANDED WITHOUT AFFIRMANCE OR REVERSAL.

COSTS TO BE PAID TWO-THIRDS BY APPELLANT AND ONE-THIRD BY APPELLEE.