494 A.2d 701

**Sharon A. SPESSARD**

**v.**

**Kevin Lee SPESSARD.**

**No. 1339, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 5, 1985.

84

Richard W. Douglas, Hagerstown (Meyers and Young, P.A., Hagerstown, on brief), for appellant.

Charles P. Strong, Jr., Hagerstown (Ottinger and Strong, Hagerstown, on brief), for appellee.

Argued before GARRITY, ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

This appeal involves whether the trial court was erroneous in holding that there was no ouster of the wife from the family home, and whether the wife must contribute to the payment of the joint obligations on the family home.

Sharon A. Spessard and Kevin Lee Spessard were married in 1966. One child was born of the marriage in 1967. She and the husband's three children from a previous marriage were also part of the household. During the marriage the parties purchased property at 1816 West Washington Street, Hagerstown, Maryland, as tenants by the entireties and used it as their family home.

The parties separated on September 3, 1981, following the return of the wife from a friend's home. The parties

related different versions of what led up to the separation and of what occurred after her return home on the night of September 3. The wife claimed that the husband drank excessively; that he did so that night; and that after she arrived home they had a confrontation, during which he broke her wrist. The husband, on the other hand, denied that he had a drinking problem. He claimed that, on the evening in question, his wife became angry about his charges of infidelity and threw things at him. Both parties agree that after the confrontation the wife left the home with their daughter and did not return; the husband remained in the home.

The wife brought suit for divorce on the grounds of constructive desertion or, alternatively, voluntary separation. She sought *pendente lite* relief, including a use and possession order for the house. The wife later abandoned that case and filed a new suit, to take advantage of a change in the law which reduced the requisite period of living separate and apart before securing a divorce. We do not know precisely what happened to the prayer for use and possession *pendente lite*. In any event, the husband remained in the home and made the mortgage payments from August 1981 through March 1984.

After hearing all the testimony, the chancellor granted a divorce based on the two-year statutory separation and made a monetary award of $8,900. The husband moved to reconsider the award for two reasons: (1) to credit an overpayment on the alimony *pendente lite;* and (2) to deal with the husband's claim for contribution for the principal, interest, taxes and insurance paid on the house, which totaled $15,359 through July 1984. The chancellor granted a credit for the $120 overpayment, from which there was no appeal. The chancellor also found there was no ouster. He revised the order and reduced the monetary award by one-half of the payments on the principal, interest, insurance and taxes. The wife contends on appeal that the chancellor was clearly erroneous in concluding there was no ouster and in reducing the monetary award by $7,679.50.

The issue was presented to the chancellor in a slightly unusual manner. At trial, the parties advised the court that they had agreed to sell the marital home outside the court proceeding. They stipulated that appellee's claim for contribution would be included as an "other factor" to be considered in making a monetary award.[1]

## THE CLAIM FOR CONTRIBUTION

### Effect of an Ouster

■ Ordinarily, a cotenant who pays the mortgage, taxes, and various carrying charges of jointly-owned property is entitled to contribution from the other. *Aiello v. Aiello*, 268 Md. 513, 518–19, 302 A.2d 189 (1973); *Pino v. Clay*, 251 Md. 454, 456–57, 248 A.2d 101 (1968); *Hogan v. McMahon*, 115 Md. 195, 201–202, 80 A. 695 (1911). But, where there has been an ouster, the cotenant in possession forfeits that right. *Young v. Young*, 37 Md.App. 211, 221, 376 A.2d 1151, *cert. denied*, 281 Md. 746 (1977). This rule of cotenancy has been held applicable to a tenancy by the entireties. *Colburn v. Colburn*, 265 Md. 468, 474–75, 290 A.2d 480 (1972); *Crawford v. Crawford*, 293 Md. 307, 309, 443 A.2d 599 (1982).

■ "Ouster is the actual turning out or keeping excluded the party entitled to the possession of any real property." *Childs v. Kansas City, St. Joseph & Council Bluffs Railroad Company*, 117 Mo. 414, 23 S.W. 373, 378 (Mo.1893). The exclusion does not require physical eviction, so long as "the act or declaration constituting the ouster [is] unequivocal and notorious." *Id.* To prove ouster, one must show "actual intent to exclude the co-tenant permanently from his rights" in the property. *Mastbaum v. Mastbaum*, 126 N.J.Eq. 366, 9 A.2d 51, 53 (N.J.1939); *see also, Hamilton v. MacDonald*, 503 F.2d 1138, 1146, (9th Cir.1974); *see, e.g., Newman v. Chase*, 70 N.J. 254, 359 A.2d 474, 481

---

1. Neither party claimed the right to contribution constituted marital property.

(N.J.1976) ("where one cotenant ... remains in possession ... and refuses to accede to plaintiff's demands for access to the property, such conduct clearly constitutes an ouster."). For example, possession under circumstances which evince "a claim of exclusive right and title" and which deny "the right of the other tenants to participate in the profits" may constitute an ouster. *Miller v. State,* 121 Conn. 43, 183 A.17, 20 (1936); *Hardman v. Brown,* 77 W.Va. 478, 88 S.E. 1016, 1019 (W.Va.1916); *see Lohmann v. Lohmann,* 50 N.J.Super. 37, 141 A.2d 84, 91 (N.J.1958).

This Court recognized the following definition of ouster in *Young, supra:*

> "[A] notorious and unequivocal act by which one cotenant deprives another of the right to the common and equal possession and enjoyment of the property."

37 Md.App. at 221, 376 A.2d 1151.

#### Present Case

In the case *sub judice,* the chancellor did not resolve the factual dispute between the parties concerning what occurred on the evening of the separation, nor did he articulate any facts that would support his terse conclusion that "[t]he Court fails to find from the evidence that there was an ouster...." Moreover, the findings that the chancellor made tended to support appellant's version of the facts, namely:

> "The husband appears to the Court to be suffering from alcoholism, although he vehemently denies it.
>
> \* \* \* \* \* \*
>
> "An estrangement existed throughout the marriage. It is clear from either account of the testimony that there was little warmth or emotional companionability between the husband and wife. The husband's indifferent attitude towards his wife finally became intolerable to her."

We simply cannot ascertain the basis for the chancellor's ruling. Pursuant to Md.Rule 1086, we must conduct an independent review of the record on both the law and the

evidence, but we will not set aside the chancellor's decision on the evidence unless it was clearly erroneous. In making that assessment, we must give due regard to the opportunity of the court to examine the credibility of the witnesses. Md.Rule 1086.

■ To conclude that the chancellor in the present case was correct, we must assume he resolved the essential factual disputes [2] in favor of the husband and against the wife. Our dilemma is that the facts actually found by the chancellor indicate a contrary resolution. We, therefore, remand to the chancellor to find the facts which resulted in his conclusion that there was no ouster, so that if necessary we may conduct a meaningful review. Md.Rule 1071.

This decision, however, does not end the inquiry because the ultimate disposition must be an equitable one. Although this Court, in *Bender v. Bender*, 50 Md.App. 174, 436 A.2d 518 (1981), *cert. denied*, 292 Md. 555 (1982), held that a wrongfully ousted spouse did not have to pay contribution during the period of the ouster, this is not an ironclad rule. The opinion of the Court indicated that cases alleging ouster must be judged on a case-by-case basis to determine whether, in fairness and equity, the payments made by the spouse in possession should be credited against what was claimed by the ousted spouse for loss of use and enjoyment of the property. *Id.* at 181, 436 A.2d 518. Since we will remand to the chancellor, we will discuss appellee's claim to contribution. A review of the historical background of joint tenancies and ouster will prove helpful.

### Co-Ownership and Claim For Contribution

The law of real property in Maryland has its roots in early English common law. *See Beall v. Beall*, 291 Md. 224, 234, 434 A.2d 1015 (1981); *Columbian Carbon Co. v. Kight*, 207 Md. 203, 206, 114 A.2d 28 (1955); *Marburg v.*

---

2. The disputes involved the character of the marriage, the events of September 3, and what occurred afterward.

*Cole,* 49 Md. 402, 411 (1878). Consequently, the concept of jointly-owned property derives from the tenor of feudal times. 2 *American Law of Property* § 6.1 (A.J. Casner ed. 1952). Joint tenancy was one of the earliest forms of co-ownership of property and occurred automatically when two or more persons were conveyed an estate in fee simple, fee tail, or for life. *Id.* Feudal society favored this tenancy over other forms of co-ownership, because it was based upon the legal fiction that all of the grantees together constituted one entity. *Id.;* 4 *Thompson on Real Property* § 1775 (Grimes ed. 1961 Repl.Vol.). "It was to the interest of the lord that each feudal holding be a single feud continuing until the death of the survivor . . ."—the joint tenancy, with its right of survivorship, achieved that purpose.[3] 2 *American Law of Property, supra,* at 3.

■ Today, joint tenancy has substantially the same characteristics as it did in feudal times: (1) joint tenants are both seized of the whole property and have equal undivided interests in it; (2) each tenant has an equal right to possession, use and enjoyment of the property; (3) each cotenant has the right to convey his interest and the right to partition the estate; and (4) on the death of one joint tenant, the surviving tenants have the whole estate. *Id.;* 2 Tiffany, *The Law of Real Property* § 419 (B. Jones ed. 3d ed. 1939).

■ Tenancy by the entireties also dates from English common law. 2 *American Law of Property* § 6.6, *supra;* Case Note, *Beall v. Beall,* 42 Md.L.Rev. 508, 515 (1983). This form of ownership exists when an estate is held by husband and wife, and arises from the common-law fiction that they are one person in law—that person being the husband. 2 *American Law of Property, supra.* In feudal

---

**3.** Cotenants took as tenants in common when their interests either: (1) did not vest at the same time; (2) were not identical; or (3) were not conveyed by the same deed or will. 2 *American Law of Property, supra.* The tenancy in common was disfavored in feudal times because, unlike the joint tenancy, the co-owners had separate interests—they did not comprise a single entity, and there was no survivorship feature. *Id.*

society, tenancy by the entireties served distinct functions. First, as a type of joint tenancy with a survivorship feature, it avoided the division of tenures. Second, it ensured that feudal services would be provided to the overlord—the husband controlled the property and was responsible for the feudal duties. Case Note, *Beall v. Beall, supra.*[4]

Maryland has retained the common law features of tenancy by the entireties, *Beall v. Beall, supra; Columbian Carbon Co. v. Kight, supra; Schilbach v. Schilbach,* 171 Md. 405, 407, 189 A. 432 (1937), but modifications have been made for purposes of distributing the proceeds of the property when the husband and wife receive an annulment or an absolute divorce. Md. Family Law Code Ann. § 8–203 (1984); *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984).

For example, in *Grant* the Court of Appeals held that a marital residence, titled as a tenancy by the entireties, is not necessarily "marital property" for purposes of granting a monetary award under Md.Cts. & Jud.Proc.Code Ann., § 3–6A–05 (1974, 1984 Repl.Vol.).[5] Rather, the source of funds test must be used to determine what portion of the marital residence constitutes "nonmarital property" or "marital property"; this test applies regardless of how the property is titled. *Id.*

 Tenancy by the entireties differs from other forms of co-ownership in that, unless there is a divorce, neither the husband nor the wife alone can partition. 2 *American Law of Property, supra; Beall v. Beall, supra; Columbian Carbon Co. v. Kight, supra.* When tenants in common or joint tenants seek partition, the equitable doc-

---

**4.** The husband's entitlement to possession and control of tenancy by the entireties property continued until the enactment of the Married Women's Property Acts in the nineteenth century. That law ensures that the husband and wife have equal rights and powers regarding property held as tenants by the entireties, *Annapolis Banking & Trust Co. v. Neilson,* 164 Md. 8, 164 A. 157 (1933), and currently appears in Md. Family Law Code Ann., §§ 4–203; 4–206 and 4–301 (1984).

**5.** Now Md. Family Law Code Ann. § 8–205.

trine of contribution typically is applied to settle the outstanding claims which relate to the property. 2 *American Law of Property* § 6.17, *supra.* The general principal is that, when one cotenant "pays more than his share of taxes, interest on mortgages, and other necessary carrying charges," equity imposes on each cotenant the duty to contribute his proportionate share, since his interest has been protected from extinction by a tax or foreclosure sale. *Id.* at 73. While that same equitable benefit accrues, the tenant by the entireties is precluded from terminating or limiting his or her liability by forcing a sale. *Id.* at 27.

The rules pertaining to contribution have withstood time and are not to be overruled lightly. Nor do we undertake to overrule them today. Instead, we recognize that they no longer apply in the same way when dealing with the granting of a monetary award under Md.Cts. & Jud.Proc.Code Ann., § 3–6A–05(b). We will explain.

### *Property Disposition in Divorce and Annulment Act*

In 1978, the General Assembly enacted the Property Disposition in Divorce and Annulment Act (Marital Property Act), which effected dramatic changes in property rights between spouses in Maryland. The statute applies in all cases filed after January 1, 1979, in which the division of property is at issue, and requires the court to determine which of the property is marital. The court then shall value all the marital property; consider each of nine factors to decide whether to grant a monetary award; and specify the amount and method of payment if the award is granted. These provisions all appeared in Md.Cts. & Jud.Proc. Code Ann., § 3–6A–01.[6] *See Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984).

Marital property is defined as:

---

6. Now Md.Family Law Code Ann., § 8–205.

"[A]ll property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources." Md.Cts. & Jud.Proc. Code Ann., § 3-6A-01(e).[7]

The Court of Appeals has held that, absent a use and possession order, marital property may include the marital residence purchased during marriage and titled as tenants by the entireties. *Grant v. Zich, supra.* While this property may be both nonmarital and marital, the marital portion remains subject to equitable distribution. The former concept of unitary ownership with equal obligations for payment of expenses must be reconsidered based on these statutory requirements.

The purpose of the Marital Property Act has been no better explained than in the case of *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982), where Judge Davidson speaking for the Court of Appeals said:

"The proposed Act established 'the concept of "marital property" as being all that property which was acquired by the parties during their marriage' and gave the court the power to 'recognize non-monetary as well as monetary contributions of the parties to the marriage' in determining the value of and making an equitable distribution of the marital property. Report of the Governor's Comm'n on Domestic Relations Laws, at 5 (1978)." *Id.* at 63, 448 A.2d 916.

Then in the words of the General Assembly itself:

"The General Assembly declares that it is the policy of this State that marriage is a union between a man and a woman having equal rights under the law. Both spouses owe a duty to contribute his or her best efforts to the

---

7. Now Md. Family Law Code Ann., § 8-201(e).

marriage, and both, by entering into the marriage, undertake to benefit both spouses and any children they may have.

"The General Assembly declares further that it is the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family, and further, that if there are minor children in the family their interests must be given particular and favorable attention."

*Id.* quoting 1978 Md.Laws, ch. 794 at 2305 (preamble).

## MONETARY AWARD

■ When deciding the effect of a claim for contribution in making a monetary award, the chancellor must determine whether the payments for which reimbursement is sought involved property that was: (1) wholly marital; (2) wholly nonmarital; or (3) partly marital and partly nonmarital. In some cases, the ouster of one spouse also may affect the proportion of the contribution. An ouster in itself, however, is not determinative of the issue but is merely an element of this "other factor" to be considered. *See* Md. Cts. & Jud.Proc.Code Ann., § 3–6A–05(b)(9), *supra.*[8]

■ We point out, as we have before, that the chancellor is not required to place the parties in a position of monetary equality *Deering v. Deering,* 292 Md. 115, 131, 437 A.2d 883 (1981). The chancellor is not precluded from allowing reimbursement to a spouse for maintaining tenancy by the entireties property, nor must he require that the spouse out of possession contribute a proportionate share of

---

**8.** In fact, the parties in the case *sub judice* stipulated that the right to contribution should be considered as an "other factor" in determining the monetary award.

the payments. Depending on the circumstances, requiring contribution could create the very inequity which the Act was designed to prevent.[9] Hence, the test involves whether the total disposition is equitable.

 In issuing his first order granting a marital award, the chancellor followed the three step process set forth in *Harper* and *Grant.* He identified the marital property and valued it. He also considered all other factors except the overpayment of alimony and the contribution claim. On remand he must determine: (1) the facts relevant to the claim of ouster; and (2) whether the facts support the allegation of ouster. He must then consider the claim for contribution in assessing a monetary award, bearing in mind the source of the funds which generated the claim. At all times, the paramount consideration must be that the disposition is equitable.

CASE REMANDED WITHOUT AFFIRMANCE OR RE-VERSAL FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE.

---

**9.** For instance, suppose the spouse in possession holds $10,000 in marital property exclusive of the real property, and also has a claim for $5,000 for one-half of the payments made on the mortgage. If the chancellor concludes the parties should receive equal amounts, the spouse out of possession would receive a monetary award of $5,000. The law of contribution as applied pre-January 1, 1979, could have allowed the claim of $5,000 for contribution. The spouse in possession, therefore, would have $10,000; the spouse out of possession would have received –0– exclusive of the real property. That is effectively what occurred here.