689 A.2d 1283

**Bruno Louis BARAN**

v.

**Janice Joann JASKULSKI**

**No. 902, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

March 3, 1997.

Dennis E. Cuomo, Towson, for Appellant.

Melissa D. Gray, Towson, for Appellee.

Submitted before CATHELL and THIEME, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

CATHELL, Judge.

Once again, we are faced with a case in which a party to a contract, perceiving with hindsight that it is not advantageous to him, asks the courts to relieve him of the bargain he made. Judge Hinkel left him with his bargain and so shall we.

Bruno Louis Baran, appellant, appeals from a judgment rendered against him in the Circuit Court for Baltimore County in an action sounding in contract, *i.e.*, to enforce an agreement incorporated but not merged in an order of divorce filed by Janice Joann Jaskulski, appellee, in which Judge Hinkel directed that the proceeds of the sale of the former marital property be distributed with $43,953.00 plus interest to appellee and $7,580.95 plus interest to appellant. Appellant challenges the correctness of the trial judge's action, presenting two issues on appeal:

 I. Whether Judge Hinkel erred in enforcing the separation agreement so as to result in gross injustice and inequality to Mr. Baran[.]

 II. Whether Judge Hinkel erred in his interpretation of the vague and ambiguous term "Crawford credits"[.]

We answer both questions in the negative and shall affirm. We shall later address the two issues in reverse order.

## The Facts

Prior to their divorce, the parties entered into a Separation and Property Settlement Agreement. That agreement was subsequently "incorporated by reference into the Order of Divorce, but not merged." (There was a modification not pertinent to the issues present on appeal.) That agreement, as relevant to the issues here presented, provided:

WHEREAS, it is the desire of the parties hereto to make a full and complete settlement of their property now owned by them and which may be hereafter acquired by them without waiving any ground for divorce which either of them may now or hereafter have against the other, the parties deem it in their best interest to enter into this Agreement to formalize said voluntary separation, *to settle their respective property rights, the right of the Wife to support, maintenance and counsel fees* and all other matters growing out of their marital relationship.

. . . .

13. The parties agree that the Wife shall have a Use and Possession of the family home at 900 Tammy Road, Baltimore, Maryland 21236, for a three (3) year period. At the end of that time (or previously if agreed to by both parties) either party may purchase the interest of the other, or in the event that neither party wishes to purchase the home, the house will be listed for immediate sale. At the time the home is sold, a sum of $10,000.00 will be placed in a joint trust fund for the educational use of the parties' one (1) minor child. *During the Use and Possession, all major repairs on the house are to be split in terms of payment, and if one party is forced to pay more than his or her share of said major repairs, that party will receive a credit at the time the house is sold. Crawford Credits will also be available to the party paying the mortgage during the Use and Possession period.*

. . . .

21. No modification or waiver by the parties of any of the terms of this Agreement shall be valid unless in writing

and executed with the same formality as this Agreement. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default.

22. *This Agreement contains the entire understanding of the parties.* [T]here are no representations, warranties, promises, covenants, or undertakings other than those expressly set forth herein.

. . . .

26. Each party hereto declares that he or she has read the foregoing Separation and Property Settlement Agreement, and that he or she has the right to independent legal advice by counsel of his or her selection, *that each fully understands the facts and has been fully informed of his or her rights and liabilities, and that after such advice and knowledge, each believes the Agreement to be fair, just and reasonable, and that each signs the Agreement freely and voluntarily.* Wife has been represented in the review, negotiations and execution of this Agreement by Nancy M. Levin. Husband has been represented in the review, negotiations and execution of this Agreement by J. David Ash. [Emphasis added.]

It was stipulated at trial that during the use and possession period, appellee paid the mortgage payments, taxes, and other carrying charges on the property at issue. Her mortgage payments totaled $28,874.44, and her payments for repairs totaled $2,363.62. Appellant's counsel argued to the trial court (much as he does here) that the "critical issue . . . is the definition of the word[s] 'Crawford credit.'" Appellant's counsel, after a discussion with the trial judge, stated:

I'm not sure that you can even go beyond what was in the four corners of the document, that being a vague, most respectfully, Your Honor, a vague definition at best of what's going to happen when the house gets sold. I think this Court really is in a position where you have to determine what you think is fair.

. . . .

But just to say a Crawford credit, Your Honor, is not a definitive statement. And I don't think the Court can really determine what is meant by that statement, which is the contract that counsel is using as the basis for claiming the credit.

In respect to the argument made below and on appeal relative to appellant's tax consequences, appellant's counsel informed the trial court:

He wasn't really aware of the capital gains situation until I had it researched for him and provided him with a definitive answer that he could not roll that over into another residence.[1]

Judge Hinkel, during a well-reasoned discussion, opined:

The agreement in paragraph 13, at the top of page 7, talks not only about the Crawford credits, but does talk about the repairs, major repairs, and how they will be handled. They'll be split evenly by the parties. The party will receive a credit at the time the house is sold.

The very last sentence is the one that causes the dispute here. That is, that Crawford credits will also be available to the party paying the mortgage during the use and possession period.

Now, in the Crawford case, if my recollection serves me correctly, it states what is the general policy or what it generally involves. And that includes not only the principal, it includes the interest, the taxes on the property. It even includes insurance on the property at times.

If the parties had intended it to mean other than that generally accepted term, they should have said so. And it could easily have been further defined rather than rely on the generally accepted understanding of the Crawford case and Crawford credits.

---

1. The agreement, as we have indicated, stated that each party had had the advice of separate counsel of his or her choice. Appellee's counsel informed the circuit court that she had advised appellant on numerous occasions to seek the advice of tax advisors, tax attorneys, his own attorney, and other such professionals.

... Judge DeWaters didn't make any determination. He merely accepted the agreement of the parties, which I trust was negotiated and was reduced to this writing.[2]

So I have no reason but to believe that the intention of the parties was to abide by the general accepted definition of Crawford credits. That being the case, the Court finds that calculations based on the stipulated figures are correct.

## Discussion

In 1982, the Court of Appeals rendered its decision in *Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599 (1982). In that case, the Court of Appeals abolished the presumption of gift between separated spouses and permitted a spouse to seek contribution in those instances when married parties were not residing together and one of them, or the other, had paid a disproportionate amount of the carrying costs of property. The Court began its analysis by noting the general law of contribution applicable to cotenants: "Generally, one co-tenant who pays the mortgage, taxes, and other carrying charges of jointly owned property is entitled to contribution from the other." *Id.* at 309, 443 A.2d 599. The Court then held:

> Therefore, a co-tenant in a tenancy by the entireties is entitled, to the same extent as a co-tenant in a tenancy in common or joint tenancy is entitled, to contribution for that spouse's payment of the carrying charges which preserve the property. Thus, Mrs. Crawford would be entitled to deduct these expenses from the proceeds of sale before splitting them between the parties.

*Id.* at 311, 443 A.2d 599.

■ "Crawford credits," *i.e.*, the contribution contemplated by the holding in *Crawford*, apply in appropriate circum-

---

**2.** Judge DeWaters rendered the Order of Divorce incorporating the agreement. Judge Hinkel, with this statement, indicates that there was no "ouster" of appellant from the premises but that appellant left pursuant to the agreement he had voluntarily agreed to, or on his own volition prior to that time.

stances even in the absence of an agreement that they apply. From our reading of *Crawford*, its holding would generally apply under facts such as these unless there was an agreement that they would not apply. Here, the parties *specifically agreed* that Crawford credits applied. In *Crawford*, the trial court had refused to apply contribution principles because of the presumption of a gift between a husband and a wife. Because of that presumption, the trial court did not address an issue before it—that there was a specific agreement as to the responsibility for mortgage payments and other carrying charges. The Court of Appeals remanded the case for the trial court to consider that issue.

In *Keys v. Keys*, 93 Md.App. 677, 614 A.2d 975 (1992), an *en banc* majority decision, the property settlement agreement, unlike the instant case, did not expressly provide for Crawford credits, *i.e.*, contribution. *Keys* was decided on the basis of general, not specific, contribution grounds. The majority held that because the right to contribution is an equitable remedy, other factors such as ouster or—in the case of *Keys*—the spouse seeking contribution having refused to cooperate in selling the property, could be considered in fashioning an equitable result. In a vigorous dissent, two of the five judges argued that cotenants were "entitled to contribution" except in the case of "ouster."[3] In this case, we do not have to revisit *Keys* with a view to either overruling or sustaining the majority holding.

In the case *sub judice*, there was no claim of post-agreement conduct on the part of appellee of sufficient severity to activate any equitable consideration as there was in *Keys*. Appellant's tax consequences are a result of the tax laws and appellant's unfamiliarity with them. There was no improper conduct on the part of appellee. Likewise, any

---

**3.** In *Keys*, the trial court did not deny the spouse contribution for all mortgage payments; it denied her contribution for payments made after the use and possession order had expired. The trial court reasoned that the spouse was not entitled to contribution after the expiration of the use and possession order because she did not cooperate in the sale of the home, as ordered by the Decree of Divorce.

favorable tax consequences inuring to appellee result from the tax code. Additionally, there was no evidence of ouster. Appellant left the house either on his own prior to the agreement or as a result of the agreement. Moreover, the court's use and possession order that granted the divorce does not constitute an ouster. *See Keys,* 93 Md.App. at 689, 614 A.2d 975. *Spessard v. Spessard,* 64 Md.App. 83, 494 A.2d 701 (1985), is also clearly distinguishable, because it involved an alleged "ouster." Ouster has always been available as a defense to a contribution claim. *See Young v. Young,* 37 Md.App. 211, 221, 376 A.2d 1151, *cert. denied,* 281 Md. 746 (1977).

In *Choate v. Choate,* 97 Md.App. 347, 629 A.2d 1304 (1993), the husband had "ousted" the wife. The wife continued to pay all of the mortgage payments and utility bills of the house even after being ousted, and the husband paid none. There was no agreement between the parties as to Crawford credits, *i.e.,* contribution. The wife filed a claim for contribution. Although we determined that the trial judge granted an improper amount and remanded, we upheld the award of contribution.

When an action is tried without a jury, we will review the case on both the law and evidence and will not set aside the trial court's judgment unless clearly erroneous. Md. Rule 8–131(c); *$3,417.46 U.S. Money v. Kinnamon,* 326 Md. 141, 604 A.2d 64 (1992); *Wilson v. State,* 319 Md. 530, 535–36, 573 A.2d 831 (1990); *Steele v. Goettee,* 313 Md. 11, 20, 542 A.2d 847 (1988); *West v. State,* 312 Md. 197, 207, 539 A.2d 231 (1988); *Dougherty v. Mercantile–Safe Deposit & Trust Co.,* 282 Md. 617, 621, 387 A.2d 244 (1978) (discussing former Md. Rule 886); *Burroughs Int'l Co. v. Datronics Eng'rs, Inc.,* 254 Md. 327, 337–38, 255 A.2d 341 (1969); *Nixon v. State,* 96 Md.App. 485, 625 A.2d 404, *cert. denied,* 332 Md. 454, 632 A.2d 151 (1993); *Comstock v. State,* 82 Md.App. 744, 757, 573 A.2d 117 (1990); *Rudo v. Karp,* 80 Md.App. 424, 431–433, 564 A.2d 100 (1989); *Weisman v. Connors,* 76 Md.App. 488, 547 A.2d 636, *cert. denied,* 314 Md. 497, 551 A.2d 868 (1989); *Simko, Inc. v. Graymar Co.,* 55 Md.App. 561, 572, 464 A.2d 1104 (1983)

(discussing former Md. Rule 1086); *In re Trevor A.,* 55 Md.App. 491, 501–02, 462 A.2d 1245 (1983), *cert. dismissed,* 299 Md. 428, 474 A.2d 207 (1984); *Baden v. Castle,* 28 Md.App. 64, 79–80, 344 A.2d 171 (1975), *cert. denied,* 276 Md. 737 (1976).

Nevertheless, matters purely of law are not governed by the clearly erroneous standard applicable to a trial court's fact-finding. In *Heat & Power Corp. v. Air Prod. & Chemicals, Inc.,* 320 Md. 584, 578 A.2d 1202 (1990), a case involving the granting of a motion for summary judgment, the Court of Appeals held:

> The clearly erroneous standard for appellate review ... does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact. A trial court determines issues of law when granting summary judgment.
>
> . . . .
>
> ... [T]he proper standard ... [is] whether the trial court was legally correct.

*Id.* at 591–92, 578 A.2d 1202 (citations omitted).

Accordingly, to the extent that appellant's issues are directed to the trial court's findings of facts, the clearly erroneous standard of review applies; to the extent appellant asserts that the trial court made a mistake of law, the standard for our review is whether the trial court was "legally correct."

As appellant's second question attacks the trial court's legal interpretation, it is a question of law. We shall address it first.

### II. Whether Judge Hinkel erred in his interpretation of the vague and ambiguous term "Crawford credits."

 Appellant argues, relying only on *Keys,* supra, and *Spessard,* supra, both cases that we have held either involve an ouster or other inequitable conduct by a party, and thus clearly distinguishable, that

> [a]s the foregoing makes clear, there is no clear-cut, for-all-time definition of what constitutes a "Crawford credit."

Rather, the definition involves a fluid and flexible framework intended to give the trier of fact the leeway to design a disposition which is equitable to both parties, according to the relevant facts and circumstances of each particular case.

Appellant seemingly argues (1) that because the cases have not given a clear-cut definition of "Crawford credits," the term is meaningless, and (2) that because there are cases involving ouster or other inequitable conduct, the term "Crawford credits" is meaningless in non-ouster cases. Appellant is mistaken. In *Crawford,* supra, the Court of Appeals's holding was quintessentially clear and definite—there is no presumption of gift between married spouses who have chosen not to live together as to contributions due to or from an opposing spouse and that such spouses can maintain actions for contribution. We hereby restate in definitive terms what the law has been, and has been understood to be:

> Crawford Credits—the general law of contribution between cotenants of jointly owned property applies when married parties, owning property jointly, separate. A married, but separated, cotenant is, in the absence of an ouster (or its equivalent) of the nonpaying spouse, entitled to contribution for those expenses the paying-spouse has paid.

Since *Crawford,* that has been the law and is universally understood to be the law. When appellant contracted to pay Crawford credits, he agreed to pay contribution. Even had he not agreed to it, appellee, under the circumstances of this case, would nevertheless be entitled to it. Judge Hinkel was legally correct.

**I. Whether Judge Hinkel erred in enforcing the separation agreement so as to result in gross injustice and inequality to Mr. Baran.**

We reiterate that there was absolutely no evidence that appellant was in any way improperly coerced into entering into the contract. He argues that, because of unforeseen tax consequences, he will net little of the sum actually disbursed to him and that appellee has benefited and may in the future benefit further from application of the tax laws. Appel-

lant pleads that 1) at one point, when subsequent negotiations were conducted in respect to a buy out, he was faced with a "proverbial Hobson's choice"; 2) he had to pay rent at another location; and 3) appellee enjoyed the mortgage interest deductions during the period of the use and possession order. He argues further that Judge Hinkel's interpretation (and thus ours) "results in a resoundingly unjust and inequitable division of the proceeds of the property's sale." It was neither Judge Hinkel nor this Court that entered into a contract agreeing to pay Crawford credits. Appellant did it to himself. If persons of sound mind, with the assistance of counsel, desire to enter into agreements that they later feel are unjust or inequitable, they have created their own problems. People are entitled to enter into contracts that contain the potential for egregious results. We recently stated in the land contract case of *Shallow Run Ltd. Partnership v. State Highway Admin.*, 113 Md.App. 156, 686 A.2d 1113 (1996):

> All of these potential problems are, if they occur, the result of the clear and certain terms of the contract. These problems were, or should have been, clearly discernable when the easement [agreement] was negotiated and the contract executed. In summation, appellant chose to enter into a contract that *clearly* created potential problems in respect to their use of ... [the land]. If the contract was bad for appellant and if appellant's use of the remainder ... is limited as a result of the contract—so what? People are permitted to enter into contracts to their disadvantage.

■ Likewise, we hold that in domestic cases, in the absence of undue influence, breach of fiduciary duties, etc., at the time of inception, persons who, with the assistance of counsel, enter into contracts settling rights to property (contracts that may later prove to be disadvantageous to them) will, generally, be left in the condition in which they placed themselves.[4]

---

4. We are reminded of part of the ballad "Betsy and I Are Out" that reads:

Draw up the papers, lawyer, *and make 'em good and stout,*

We perceive no error and no incorrect conclusion of law. The trial court was correct.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**

For things at home are crossways, and Betsy and I are out.
Will Carleton, *Betsy and I Are Out in* FARM BALLADS (1878) (emphasis added).