693 A.2d 364

**Gilbert BLOCH**

v.

**Ruth BLOCH.**

No. 1275 Sept.Term. 1996.

Court of Special Appeals of Maryland.

May 5, 1997.

Howard K. Kurman, Offit & Kurman, P.A., Owings Mills and Josef E. Rosenblatt, Baltimore, on the brief, for Appellant.

Stuart N. Braiterman, Towson, for Appellant.

Submitted before CATHELL and SONNER, JJ., and JOHN J. BISHOP, J. (Retired Specially Assigned).

CATHELL, Judge.

Gilbert Bloch, appellant, was granted an absolute divorce from Ruth Bloch, appellee, on July 5, 1995. The parties' Voluntary Separation and Property Settlement Agreement provided for, inter alia, the payment of alimony by appellant to appellee. On January 16, 1996, appellee filed, due to the cessation of alimony payments, a Petition for Contempt Citation and/or to Enforce Property Settlement Agreement in the Circuit Court for Baltimore County. Appellant filed a timely Notice of Appeal, following the entry of a judgment in favor of appellee for alimony arrearage in the amount of $21,600, plus counsel fees. Appellant presents one question for our consideration:

Did the trial court err as a matter of law in refusing to order the alimony dispute between Mr. and Mrs. Bloch to be decided by final and binding arbitration as was contemplated by Paragraph 3.F. of their Voluntary Separation and Property Settlement Agreement[?]

We shall hold that the circuit court erred in not ordering the matter to be resolved by arbitration; accordingly, we shall vacate the court's judgment and remand the matter for further proceedings.

## The Relevant Facts

Appellant is the principal stockholder and chief operating officer of Inter Sign National, Inc. (ISN). Instead of a requirement that appellant pay alimony directly to appellee, the parties' Voluntary Separation and Property Settlement Agreement (the Agreement) provided for the payment of a "salary" by ISN to appellee, despite the fact that she did no work for the company. In pertinent part, paragraph 3 of the Agreement provides:

B. *Wife's Salary.* Husband [appellant] agrees that Wife [appellee] shall be paid as a salaried employee of Inter Sign

National, Inc. ("ISN") according to the following terms and conditions:

(1) As of the date of this Agreement and continuing until Wife attains the age of sixty-three (63) on May 24, 2000, ISN shall pay Wife the gross weekly salary of Nine Hundred Dollars ($900.00) less all necessary and appropriate deductions.

. . . .

C. *Wife's Alimony.* If, at any time, ISN shall be financially unable to pay the salary outlined in Paragraph 3.B., Husband shall pay to Wife on or before the fifteenth day of each month, as alimony in lieu of ISN salary, . . . a sum of money comparable to what ISN would have paid Wife in salary.

. . . .

E. *Termination of Support.* Salary/alimony shall continue until the first to occur of (a) Wife's remarriage; (b) the death of Husband or Wife; (c) Wife attaining the age of sixty-five (65); (d) Husband's incapacity or financial inability to pay either the salary or alimony.

F. *Nonmodifiability . . . . If there is a disagreement* by the parties concerning Wife's claim for an increase in support solely attributable to her increased financial needs, or *concerning Husband's claim of inability to pay the described salary/alimony, such dispute shall be resolved by resorting to final and binding arbitration.* [Emphasis added.]

From July of 1995 through October of 1995, ISN made the contemplated "salary" payments to appellee. On October 31, 1995, ISN filed a petition for bankruptcy, and, thus, was no longer able to pay a salary to appellee, an "employee" who performed no work for the company. Consequently, the burden to pay alimony shifted to appellant under paragraph 3.C. of the Agreement. It appears that, in November 1995, appellant made an alimony payment of $600 to appellee. Thereafter, he filed his own individual bankruptcy petition, and all further payments ceased.

On January 16, 1996, appellee filed, together with a Show Cause Order, a Petition for Contempt Citation and/or to Enforce Property Settlement Agreement (the Petition) in the Circuit Court for Baltimore County. In the Petition, appellee requested an order finding appellant in contempt and "punish[ment]" therefor, "enforce[ment]" of the Agreement,[1] a judgment for alimony arrearage, and counsel fees. In his Answer to Show Cause Order and Counterpetition for Arbitration, appellant advised the court that both he and ISN were currently undertaking bankruptcy proceedings and then alleged that his "obligation to pay alimony terminated pursuant to paragraph 3.E.(d) [of the Agreement] upon [his] financial inability to pay either the salary or alimony." Appellant then pronounced "that he is financially [un]able to pay the alimony." Additionally, appellant stated:

The Agreement—Paragraph 3 F.—provides that any dispute concerning the Husband's claim of inability to pay the described salary/alimony ... shall be resolved by resorting to final and binding arbitration. Gilbert Bloch [appellant] petitions this Court for an Order directing this dispute to final and binding arbitration.

In response, in her Answer to Counterpetition for Arbitration, appellee averred that she

oppose[d] referral of this matter to arbitration as the parties['] Voluntary Separation and Property Settlement Agreement fails to define the powers and/or duties of an arbitrator, fails to provide a mechanism for appointing an arbitrator and fails to define the criteria an arbitrator must use in order to make a decision.

Subsequently, on April 8, 1996, a hearing was conducted before the circuit court. As a preliminary matter, the court found that the provision calling for arbitration was "very, very vague," and, thus, unenforceable, after which the court decided, "I am going to take jurisdiction[,] and we are going to have

---

1. Despite seeking "enforce[ment]" of the Agreement, appellee did not append a copy of the Agreement to her Petition.

a hearing on it today." Following testimony by both parties, the court found that there had been no change to appellant's financial situation since the divorce that would render him unable to pay the alimony that was agreed to. The court, therefore, reduced the alimony arrearage, $21,600, to a judgment and further ordered appellant to pay appellee's counsel fees, $2,013.70, under paragraph 14.E. of the Agreement. The court also denied appellant's Counterpetition for Arbitration. The circuit court's judgment, encompassing all of the above findings, was filed on April 23, 1996. Appellant noted a timely appeal therefrom.

### Discussion

Appellant avers that, despite the exclusion of several material terms from the arbitration provision that relate to the manner in which the arbitration is to be conducted, it is enforceable. He argues:

As stated by the Maryland Uniform Arbitration Act (Section 3–211(c) [of the Courts and Judicial Proceedings Article] ), if an agreement does not provide how an arbitrator shall be appointed, the court appoints the arbitrator. Furthermore, if an arbitration agreement does not provide for the payment of an arbitrator's expenses, fees, and any other expense incurred in the conduct of the arbitration, Section 3–221(a) of the Maryland Uniform Arbitration Act provides that the arbitrator determines such questions. The court's denial of Mr. Bloch's [appellant's] right to have the issue of his inability to pay contractual alimony decided by an arbitrator, frustrated the parties' contractual intent and, equally important, violated the public policy of this state which unambiguously favors arbitration as a means of resolving disputes between litigants.

We agree.

We begin by noting that "[a]rbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. . . . Th[e] [C]ourt [of Appeals] has recognized that arbitration is a matter of contract which the parties should be allowed to

conduct in accordance with their agreement." *Charles J. Frank, Inc. v. Associated Jewish Charities, Inc.*, 294 Md. 443, 448, 450 A.2d 1304 (1982) (citations omitted); *see also Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91 (1983); *C.W. Jackson & Assocs. v. Brooks*, 289 Md. 658, 666, 426 A.2d 378 (1981); *Rosecroft Trotting & Pacing Ass'n v. Electronic Race Patrol, Inc.*, 69 Md.App. 405, 408, 518 A.2d 137 (1986). The legislative policy of this State favors enforcement of executory agreements to arbitrate. *See Crown Oil & Wax Co. v. Glen Constr. Co.*, 320 Md. 546, 558, 578 A.2d 1184 (1990), and cases cited therein.

▬▬▬ Section 3–207 of the Courts and Judicial Proceedings Article, part of the Maryland Uniform Arbitration Act, provides for the situation when a party to an arbitration agreement refuses to arbitrate. "If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists." Md.Code (1973, 1995 Repl.Vol.), § 3–207(b) of the Courts & Judicial Proceedings Article (CJ). When an arbitration agreement exists, or is alleged to exist, the court's jurisdiction may properly be invoked in two limited contexts; that is, to compel arbitration or to stay it. *See Petals Factory Outlet, Inc. v. EWH & Assocs.*, 90 Md.App. 312, 316, 600 A.2d 1170 (1992). Section 3–210 specifically prohibits a court from refusing to order arbitration "[o]n the ground that the claim in issue lacks merit or bona fides; or [b]ecause a valid basis for the claim sought to be arbitrated has not been shown." CJ §§ 3–210(1)–(2). Thus, the "Act strictly confines the function of the court in suits to compel arbitration to the resolution of a single issue—is there an agreement to arbitrate the subject matter of a particular dispute." *Gold Coast Mall*, 298 Md. at 103–04, 468 A.2d 91 (citation omitted); *see also Stauffer Constr. Co. v. Board of Educ.*, 54 Md.App. 658, 664, 460 A.2d 609, *cert. denied*, 297 Md. 108 (1983) (holding that sole issue before circuit court is whether the alleged agreement to arbitrate exists); *Bel Pre Medical Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 320, 320 A.2d 558 (1974), *modified*, 274 Md. 307, 334 A.2d 526 (1975). Furthermore, when, as here,

the parties are in dispute as to whether the arbitration provision is enforceable, the resolution of that issue is for the court. *Mayor of Baltimore v. Baltimore Fire Fighters, Local 734,* 93 Md.App. 604, 610, 613 A.2d 1023 (1992), *cert. denied,* 329 Md. 337, 619 A.2d 547 (1993); *accord Stephen L. Messersmith, Inc. v. Barclay Townhouse Assocs.,* 313 Md. 652, 661, 547 A.2d 1048 (1988). All doubts, however, are to be resolved in favor of submitting the dispute to arbitration. *See Mayor of Baltimore,* 93 Md.App. at 610, 613 A.2d 1023.

In the case *sub judice,* upon the filing of appellant's Counterpetition for Arbitration, the nature of the case below became an action to compel arbitration. In her response, although she acknowledged the inclusion of the arbitration clause in the Agreement, appellee argued that the provision was unenforceably vague. This constituted a refusal to submit the dispute to arbitration. At that point, the initial issue to be decided by the trial court was whether the arbitration agreement was enforceable. The circuit court found that the provision was "very, very vague"; stated otherwise, the court found the provision to be unenforceable because it failed to specify certain key terms relating to the conduct of the arbitration itself. In doing so, the court erred. We explain.

During the course of the hearing, the court expressed its concerns about arbitration between the parties: "[W]ho would be the arbitrator, who is going to pay for the arbitration and when [will it] be taking place[?] ... [W]ho is going to pay for it?" Although it would have been prudent of the parties to have foreseen these and other questions, should the need for arbitration arise, as it did, the absence of these details is not fatal to the arbitration agreement. Rather, the answers are provided by the "gap-fillers" contained in the Maryland Uniform Arbitration Act. In particular, section 3–211 provides for the appointment of arbitrators by the court if the agreement is otherwise silent: "A court shall appoint one or more arbitrators if ... [t]he arbitration agreement does not provide a method of appointment." CJ § 3–211(c)(1). Similarly, "[u]nless the arbitration agreement provides otherwise, the

award shall provide for payment of the arbitrators' expenses, fees, and any other expense incurred in the conduct of the arbitration." CJ § 3–221(a). The award may not, however, "include counsel fees," unless the arbitration agreement provides otherwise. CJ § 3–221(b). Furthermore, "[u]nless the agreement provides otherwise, the arbitrators shall designate a time and place for hearing and notify the parties . . . not less than five days before the hearing." CJ § 3–213(a). "On petition of a party, the court may direct the arbitrators to proceed promptly with the hearing and determination of the controversy." CJ § 3–213(d). Finally, "[t]he majority of the arbitrators may determine any question and render a final award." CJ § 3–215(a). Thus, through resort to the Maryland Uniform Arbitration Act, the court's concerns can be answered when, as here, the agreement is otherwise silent.

It appears that there are only two prior Maryland cases that specifically deal with the arbitration of alimony disputes: *Horsey v. Horsey*, 329 Md. 392, 620 A.2d 305 (1993), and *Kovacs v. Kovacs*, 98 Md.App. 289, 633 A.2d 425 (1993), *cert. denied*, 334 Md. 211, 638 A.2d 753 (1994). In *Horsey*, the parties' voluntary separation agreement provided for the submission of disputes pertaining to a reduction or increase in alimony to arbitration.[2] Bypassing this provision, Mr. Horsey filed a petition in the circuit court seeking to hold Mrs. Horsey, his former wife, in contempt for having breached their agreement. Mrs. Horsey brought a countersuit seeking specific performance of the agreement. Unlike the case *sub judice*, neither party requested arbitration or sought a stay in

---

**2.** The Horseys' agreement provided that alimony disputes "shall be submitted to arbitration in accordance with the provisions hereinafter set forth." *Horsey*, 329 Md. at 395, 620 A.2d 305. In fact, the agreement failed to set forth any such arbitration provisions. Before the trial court, Mr. Horsey argued, *inter alia*, that arbitration was not available because "the parties had not included in their agreement any method for selection of an arbitrator,"—*i.e.*, the agreement was unenforceable due to its vagueness. *Id.* at 427, 620 A.2d 305 (McAuliffe, J., dissenting). The trial court rejected that argument, however, noting that the court "has authority to appoint an arbitrator when the agreement of the parties does not provide a method of appointment." *Id.*

the circuit court proceedings pending arbitration. Instead, before the trial court, both parties expressly waived the arbitration clause. Nonetheless, the trial court ordered the parties to conduct arbitration under their agreement.

The Court of Appeals reversed. The *Horsey* Court opined that "the right to arbitrate a dispute is a matter of contract between the parties, and, as such, it may be waived. A party's intent to waive arbitration ' "must be clearly established and will not be inferred from equivocal acts or language." ' " *Id.* at 406, 620 A.2d 305 (citations omitted). Finding that the parties had "unequivocally waived their contractual right to arbitration as a means for resolving their dispute," *id.* at 407, 620 A.2d 305, the Court held that the circuit court had erred in ordering the parties to undertake arbitration. The instant case differs significantly from Horsey, in that appellant has clearly not waived arbitration. Rather, he has asserted his right to it at every step of the proceedings.

In *Kovacs*, the parties, both Orthodox Jews, in their separation agreement, contemplated the arbitration of their disputes before and in accordance with the rules of the Beth Din, a Jewish court presided over by three rabbinic judges. 98 Md.App. at 295–96, 633 A.2d 425. Following the ruling by the Beth Din, Mr. Kovacs filed, in the circuit court, a petition to confirm the arbitration award. In response, Mrs. Kovacs submitted a petition seeking to vacate or modify the award. The circuit court denied Mrs. Kovacs's petition; the court found that the Beth Din proceeding was in accordance with the Maryland Uniform Arbitration Act and, more significantly, that Mrs. Kovacs had voluntarily entered into the arbitration process. The court, accordingly, adopted the ruling and awards of the Beth Din.

On appeal to this Court, Mrs. Kovacs argued that the entire award of the Beth Din should be vacated because its proceedings were not in accordance with the Maryland Uniform

Arbitration Act.[3] We concluded, however, "that the Court of Appeals has recognized the validity of an arbitration proceeding that does not comply with the Act, so long as the litigants voluntarily and knowingly agree[d] to the arbitration procedures," *id.* at 304, 633 A.2d 425, as the parties had in fact done. We then held "that litigants may waive their rights under the Act and submit to arbitration proceedings that do not meet all of the requirements of the Act." *Id.* at 305, 633 A.2d 425. In other words, the Kovacs, in their contract, had expressly waived application of the Maryland Uniform Arbitration Act when they agreed to be bound by the substantive and procedural rules of the Beth Din. No such waiver occurred in the case at bar. Rather, the Agreement provides that it "and all of its provisions shall be interpreted in accordance with the laws of the State of Maryland." Thus, as opposed to the situation extant in Kovacs, the Agreement is within and subject to all of the terms of the Maryland Uniform Arbitration Act. *See* CJ § 3–202.

We have discussed arbitration generally in numerous contexts other than alimony disputes. In *Joseph F. Trionfo & Sons, Inc. v. Ernest B. LaRosa & Sons, Inc.,* 38 Md.App. 598, 381 A.2d 727, *cert. denied,* 282 Md. 734 (1978), a subcontractor sued the general contractor after completing certain excavation work. The general contractor claimed that a subsection of the main contract, incorporated by reference into the subcontract, required the dispute to be submitted to the architect for decision. *Id.* at 603, 381 A.2d 727. As relevant here, we opined

> that no particular form of words is indispensable to the making of a valid agreement to adjust and mediate a dispute between contracting parties without resort to litigation.

3. In *Kovacs,* we vacated only those portions of the circuit court's judgment that pertained to child custody and visitation, which the court had incorporated from the ruling of the Beth Din. We did so, not because those rulings were not in accordance with the Maryland Uniform Arbitration Act, but because the court had failed to exercise its independent judgment as mandated by section 8–103 of the Family Law Article. *See* 98 Md.App. at 299–302, 633 A.2d 425.

> Indeed, the language need not include the word "arbitrate" nor "arbitration." Neither is it fatal or improper ... that a representative of one of the contracting parties ... is the one designated as the mediator whose decision is to be recognized as final and binding. There must, however, be some reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling factor.

*Id.* at 605–06, 381 A.2d 727 (citations omitted); *see also Crown Oil,* 320 Md. at 558, 578 A.2d 1184 (stating that the "intention of the parties controls on whether there is an agreement to arbitrate").

In the case *sub judice,* the Agreement provides:

> If there is a disagreement by the parties concerning ... Husband's claim of inability to pay the described salary/alimony, such dispute shall be resolved by resorting to final and binding arbitration.

This provision leaves no question as to the intent of the parties. While this clause may be sparse, it is not ambiguous. Moreover, as discussed previously, the lack of specificity is not fatal to the agreement. The parties have clearly agreed that, if they should disagree as to appellant's claim that he is unable to pay the alimony, then that dispute will be resolved by arbitration and not the courts.

In the recent divorce case of *Baran v. Jaskulski,* 114 Md.App. 322, 689 A.2d 1283 (1997), parties' voluntary separation agreement, in part, provided simply that "Crawford Credits will ... be available to the party paying the mortgage during the Use and Possession period." *Id.* at 325, 689 A.2d 1283 (emphasis omitted). The former husband appealed to this Court after the circuit court ordered him to pay contribution to his former wife out of the proceeds of the sale of the family home. He argued that "there is no clear-cut, for-all-time definition of what constitutes a 'Crawford credit,'" and, thus, the circuit court erred in awarding contribution to the wife. After reviewing the holding of *Crawford v. Crawford,*

293 Md. 307, 443 A.2d 599 (1982), and the treatment of "Crawford credits"—the contribution contemplated by the holding in *Crawford*—in subsequent cases, we held that "[w]hen [the husband] contracted to pay Crawford credits, he agreed to pay contribution." 114 Md.App. at 332, 689 A.2d 1283. In doing so, we once again declined to relieve a contracting party, who has perceived with hindsight that the agreement he entered into is not advantageous to him, of the bargain he made for himself. We shall do the same in the case *sub judice*. The parties agreed that their disputes as to modifications of alimony would be submitted to arbitration. Appellee, apparently, perceives that that manner of dispute resolution is not advantageous to her. Nonetheless, she agreed to it, and we shall compel her to do that which she agreed to. Accordingly, we must reverse the circuit court's denial of appellant's Counterpetition for Arbitration and vacate the judgment.

Finally, as part of its judgment, the circuit court awarded counsel fees to appellee. Because these fees related to appellee's claim for alimony and the court erred in hearing that claim, we shall vacate the award of counsel fees. The Agreement appears to contain contradictory provisions as to whether counsel fees may be awarded; this matter, too, can be resolved in arbitration under section 3–221(b) of the Courts and Judicial Proceedings Article.[4]

**DENIAL OF APPELLANT'S COUNTERPETITION FOR ARBITRATION REVERSED; JUDGMENT OTHERWISE VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO BEAR THE COSTS.**

---

4. We do not address the legality of the tax avoidance aspect of the agreement, if any, but note that if that issue is applicable, it, too, can be addressed by the arbitrator.